# Sims *v.* Sampey.

*Bill in Equity to Enforce a Vendor's Lien on Land.*

1. *Vendor's lien; when discharged.*—An administratrix, under the decree of the court of probate, sold lands of which her intestate died seized and possessed, and took the purchaser's note for the purchase-money. The sale was reported to, and confirmed by the court. Afterwards, without reporting the payment of the purchase-money, and without any order of court, the administratrix, of her own volition and before the purchase-money was paid, executed to the purchaser a deed to the lands. At or about the time the deed was executed, by agreement between the intestate's heirs and the administratrix, and the purchaser of the lands, the note for the purchase-money was surrendered to the purchaser, who became responsible to each heir for the share of the note to which he or she was entitled, and each heir gave the administratrix a receipt for such share. Afterwards the purchaser paid all the heirs except one, whom he refused to pay. On a bill filed by her to enforce a vendor's lien on the lands for the amount which the purchaser owed her, *held,*

1. That the relation of vendor and vendee never existed between the complainant and the purchaser of the lands.

2. That the effect of the transaction was a dissolution of the contract for the payment of the purchase-money of the lands, an extinguishment of the debt therefor, and the creation of several new and independent contracts, by which the purchaser became bound to pay separately to each heir the share of the purchase-money the administratrix would have been bound to pay, if to her the purchaser had made payment of the purchase-money.

3. That the lien being a mere incident to the debt, it was discharged when the debt was extinguished.

APPEAL from Conecuh Chancery Court.

Heard before Hon. JNO. A. FOSTER.

The bill in this cause was filed on July 18, 1879, by Mrs. Hattie L. Sampey against her husband, George G. Sampey, and J. W. Sampey and Thomas W. Sims, and its material averments may be stated as follows :. On 27th November, 1871, Mrs. M. D. Burnett, as the administratrix of the estate of John H. Burnett, deceased, under an order of the Probate Court of Conecuh County, sold a tract of land belonging to said estate, and at the sale George G. and J. W. Sampey became the purchasers. The sale was reported to, and confirmed by the Probate Court, and afterwards said purchasers " took with them in said purchase one F. M. Sampey and the three together executed their promissory note " to the administra-

[Sims v. Sampey.]

trix for $2760.00, the amount bid for the lands at the sale, payable on November 27, 1872. On 7th January, 1873, a payment of $500.00 was made on the note and F. M. Sampey was released therefrom, and a deed made by the administratrix, in pursuance of an order of the Probate Court, to George G. and J. W. Sampey, conveying to them the lands bid in by them at the sale, and they took possession thereunder. The complainant was an heir at law of said decedent, and on the final settlement of the estate, made by the administratrix on or about the 7th January, 1873, she received from the administratrix, as part of her distributive share of said estate, a claim for $394.28 against said purchasers, which, she avers, was due by them for the purchase-money of said lands, and that the same was her sole property and had never been paid, and that at the time she received the claim it was agreed and understood between her and said purchasers that she was to have and retain a vendor's lien on said lands for the payment of said claim. On or about January 6th, 1879, said lands were sold under a decree rendered by the Chancery Court of Conecuh county in favor of Mrs. Margaret D. Burnett, as guardian of Rachel Burnett, another heir of said John H. Burnett, deceased, against George G. and J. W. Sampey, " to satisfy a note given" to her, as such guardian, for Rachel Burnett's part of said purchase-money, and at the sale Thomas W. Sims became the purchaser at and for the sum of $611.82, the amount of the decree and costs, and the register executed to him a conveyance, and he went into possession of the lands under his purchase, and was in the possession thereof when the bill was filed. At the sale complainant gave public notice of her claim on the lands for the unpaid purchase-money due her. The prayer of the bill was, that the complainant be allowed to pay back to Sims the sum paid by him for the lands, and to take the title he now holds thereto, and that she be decreed to have a vendor's lien on the lands, and that the same be sold for the payment of her said claim against George G. and J. W. Sampey, and for general relief. The defendants interposed demurrers to the bill, which were overruled by the court. From the decree overruling the demurrers the defendants appealed to this court; and on the hearing of that adpeal, the decree of the Chancery Court was reversed, and the cause remanded.—*Sims v. Sampey*, 64 Ala. 230.

After the cause was remanded, the complainant amended her bill. The substance of . the bill as amended, is given in the opinion. To the bill as amended the defendants demurred, assigning numerous causes of demurrer, a statement of which is not deemed necessary to a proper understand-

[Sims v. Sampey.]

ing of the opinion. The chancellor caused a decree to be entered overruling the demurrer, from which the defendants appealed. That decree is here assigned as error.

G. R. FARNHAM and H. PILANS, for appellant.

STALLWORTH & BURNETT, contra.

BRICKELL, C. J.—This cause was before the court at a former time, and is reported.—*Sims v. Sampey*, 64 Ala. 230. We then decided that, as it appeared from the averments of the original bill, the purchase-money of the lands had been fully paid, the fact of payment reported to the court of probate, and a conveyance to the purchasers ordered by the court, and executed by the administratrix, the equitable lien, the security for the payment of the purchase-money, was of necessity extinguished. The lien is an incident of the debt for the purchase-money, and could not survive its payment, whatever other equity, if any, was created by the subsequent transactions between the parties. It was further decided that, if the purchase-money was not paid, and there was by agreement a transfer by the administratrix to the complainant of a part of the note given for the purchase-money, equal to the share thereof, to which the complainant as heir at law would be entitled on distribution, the transfer passed only an equity. The administratrix became a trustee of the note for the purchase-money to the extent of the transfer to the complainant. It followed that the complainant, as *cestui que trust*, was bound by the decree the administratix subsequently obtained, charging the lands with a lien for a part of the purchase-money, under which they were sold and purchased by Sims. The lien is an entirety, incapable of being split into fragments, multiplying suits, and embarrassing judicial sales.

The bill has since been amended, and it is now averred that payment of the purchase-money was not reported to the court of probate by the administratrix, and the conveyance of the lands to the purchasers by the administratrix was not made under an order of the court ; that such conveyance was made by the administratrix of her own volition, before payment of the purchase-money ; that at or about the time of its execution, by agreement between the heirs of the intestate and the administratrix, and the purchasers of the lands, the note for the purchase-money was surrendered to the purchasers, who became responsible to each heir for the share of the note to which he or she was entitled, and each heir gave the administratrix a receipt for such share, and that the pur-

[Sims v. Sampey.]

chasers have paid all the heirs, except the complainant, and have refused to pay her, and refuse to make their note to her for her share. These are the matters of substance averred in the amended bill, and we are unable to see that they improve the right of the complainant to relief.

The relation of vendor and vendee never existed between the complainant and the purchasers of the lands. There was no relation existing between them, no privity until the purchase-money was paid, the note evidencing it surrendered, the purchasers discharged from liability for it to the administratrix, and she discharged from all liability for it to the complainant. The effect of the transaction, and the only effect the parties could have intended it should have, was a dissolution of the contract for the payment of the purchase-money of the lands and the creation of several new and independant contracts, by which the purchasers became bound to pay separately to each heir the share of the purchase-money the administratrix would have been bound to pay, if to her they had made payment of the purchase-money. Each heir accepted the purchasers as his or her individual debtors, to the extent of the separate individual right, instead of the entire liability to the administratrix, and instead of her liability to the heirs separately or collectively, and in consideration of the acceptance, and her discharge from liability, she released and discharged the purchasers from liability for the purchase-money of the lands. The debt for the purchase-money was extinguished, and new contracts, resting on a new consideration, were created. It is not an unusual transaction for a debtor to discharge himself from liability to his original creditor by contracting a new obligation in favor of a new creditor, by the order of his original creditor. When such contract is made, the original debt is as fully extinguished as if money had been paid in its satisfaction.—1 Parsons on Con. 217. It is plain the purchasers were discharged, fully discharged, from all liability to the administratrix for the purchase-money of the lands ; and it is plain that the administratrix is fully discharged from all liability for it t ɔ the complainant. The satisfaction, the discharge of these liabilities the parties contemplated ; and they contemplated the creation of new debts between new parties, resting upon new, separate, distinct considerations. The debt due to the complainant from the purchasers is capable of enforcement in a court of law, if she has not by her *laches* lost her right. It is not a lien on the lands, but is a mere general debt.

The legal estate in the lands remained in the heirs, if, as now averred, the conveyance was executed by the adminis-

tratrix, without the authority of an order of the probate court. Whether, if the complainant asserts her legal title to an undivided share of the lands, a court of equity would intervene to divest it, is a question not now presented for consideration. The court never intervenes to divest a legal estate, except upon the condition of doing equity,—of compelling the party claiming equity, to render it himself. Whether it would not refuse to interfere unless payment was made of the debt now claimed, or whether it would not be inequitable under the circumstances to permit the complainant to exact the payment as a condition upon which the title should be divested, it is not our province now to consider.

The decree of the chancellor must be reversed, and a decree here rendered sustaining the demurrer and remanding the cause.