# Flournoy *v.* Harper.

## *Bill in Equity to enforce Vendor's Lien.*

1. *Vendor's lien, as between assignee of note for purchase money and assignee of note of sub-purchaser on re-sale.*—Where the purchaser of land, having made a cash payment and given his note for the balance of the purchase money and received a bond for titles, sells and transfers his purchase to a third person, who assumes the payment of the outstanding note, gives his own note to the first purchaser for $125.00 and surrenders to him forty acres of the land in consideration of improvements erected and a cash payment made by him; the original vendor, having assigned the first purchaser's unpaid note for value, holds the legal title to the land in trust for his assignee; and the contract for resale being modified, with the assent of the original vendor and his assignee, and consummated by the surrender of the title bond and note for the purchase money, the execution by the original vendor of a conveyance of the forty acres to the first purchaser, and a conveyance of the residue of the tract to the sub-purchaser, reciting therein notes for the unpaid purchase money made by the sub-purchaser payable to the assignee of the original note. who refused to make further concessions and claimed a first lien on said residue of land—these facts show the retention of a first lien on the said residue of land in favor of the assignee, for the payment of the substituted note, which must prevail against the holder of the note for $125.00 given by the sub-purchaser to the first purchaser.

2. *Payment of note; facts not showing.*—When the maker of a note, given for the purchase money of land, having procured the transfer to himself of a judgment against the payee, entered satisfaction of the judgment, in consideration of the surrender of his note, and then delivered the note to the transferror and real owner of the judgment, as whose agent he acted in the transaction; *held*, that these facts showed only an exchange of the note for the judgment, and did not operate a payment of the note, in favor of the maker, as against a subsequent assignee.

3. *Want of necessary parties; party coming in by petition.*—When the bill is wanting in necessary parties, and the complainant refuses to bring them in, his bill may be dismissed; but the court has no power to let the absent party intervene by petition, and render a decree in his favor without other pleadings.

4. *Parties to bill foreclosing liens.*—A junior incumbrancer, or party having a secondary lien on land, may file a bill to enforce or foreclose it, without making the senior incumbrancer a party; and it is not clear that he can force the latter to come in and foreclose his lien.

APPEAL from the Chancery Court of Coffee.

Heard before the Hon. JOHN A. FOSTER.

James B. Hawkins made a contract of sale of three hun-

[Flournoy v. Harper.]

dred acres of land to E. N. LaRoche for $500.00. Of this amount LaRoche paid $100.00 cash and executed to Hawkins two promissory notes of $200.00 each for the balance, payable in one and two years, respectively ; and Hawkins gave LaRoche bond for title on payment of the notes. Hawkins sold these notes for value to appellant, J. E. P. Flournoy. When the notes fell due, LaRoche, being unable to meet them, entered into an agreement with one James M. Crosby, that said Crosby should take his purchase off his hands, assume the payment of the said purchase money notes transferred to Flournoy, and, in consideration of the cash payment of $100.00 and certain improvements made by LaRoche on the lands, should relinquish to him forty acres of the land and execute to him a note for $125.00. When LaRoche and Crosby asked Flournoy's consent to this arrangement, the latter agreed to surrender all claims to the forty acres of land, and that it should be conveyed directly from Hawkins to LaRoche, that Crosby should give his two promissory notes to Flournoy in place of LaRoche's notes to Hawkins which had been transferred to Flournoy, that Hawkins should convey title to the residue of the land (260 acres) to Crosby, and that LaRoche should give up Hawkins' bond for title and LaRoche's notes should be returned to him. Flournoy refused to make further concession and insisted that he should retain a first lien on the two hundred and sixty acres for the payment of the said notes to him. The arrangement as modified by Flournoy was carried into effect. The deed from Hawkins to Crosby for the two hundred and sixty acres of land, recited as its consideration the two notes from Crosby to Flournoy, which had been substituted for or given in renewal of LaRoche's notes to Hawkins. The note for the $125.00, which Crosby gave LaRoche under the agreement, expressed on its face, that it was given for real estate in Coffee county, the county in which the land sold was located, and the evidence showed that LaRoche, after having first received a plain note, insisted upon a waiver note, which Crosby refused, but had the words "for real estate in Coffee county" inserted in the note, telling LaRoche (according to LaRoche's testimony) that the land was bound for the note.

This note of Crosby to LaRoche for $125.00 passed for a valuable consideration into the hands of the appellee, Sampson B. Harper, who filed his bill of complaint against said Crosby to enforce a vendor's lien on said two hundred and sixty acres of land for the payment of said note. Crosby filed an answer, denying that the note was a lien upon said

land and alleging payment thereof. As to the alleged payment of the note, the testimony showed, that Crosby procured the transfer to himself of two judgments against LaRoche, one in favor of Dr. Rushing and the other in favor of Harper, Blue & Harper, a firm of which appellee was a member ; that these judgments amounted in the aggregate to about the amount due on the note ; that LaRoche turned over the note to Crosby in consideration of Crosby, as transferree of said judgments, entering satisfaction thereof upon the docket ; but that Crosby had not paid anything for said judgments and turned the note over to the said Rushing, and Harper, Blue & Harper, in consideration of their transfer of said judgments to him. Said note finally became the property of Sampson B. Harper, the appellee, alone.

The appellant, J. E. P. Flournoy, was not made a party to the original bill, but at the suggestion of the chancellor, filed a petition alleging that the two notes of Crosby, held by him, under the facts above recited, were a first lien upon said two hundred and sixty acres of land, and praying that they be so declared, and that said land be sold for their payment, and that Crosby and Harper be made parties defendant to the petition. Testimony was taken to establish the allegations of the petition.

The chancellor rendered a final decree, overruling a motion by the complainant, Harper, to dismiss this petition recognizing Flournoy as a party, and so far passing upon his rights, as to hold that he and complainant each had a lien upon said land, with equal equities, and were entitled to share *pro rata* in the proceeds of the land, and ordering the land to be sold for the payment of the claims of both.

This decree, and other rulings of the court not necessary to mention, are here assigned as error.

J. E. P. Flournoy, and Watts & Son, for appellant. 1. As LaRoche gave his two notes to Hawkins, and Hawkins gave bond for titles to LaRoche, Hawkins retained the legal title as a security for the payment of the purchase-money. He was a mortgagee, and the transfer of the two notes to Flournoy gave Flournoy the mortgage as a security, and Flournoy had a lien upon *all* the lands sold by Hawkins to LaRoche. The notes of Crosby substituted for those of LaRoche had the same lien upon all the lands, except the forty acres retained by LaRoche under the agreement between him, Crosby and Flournoy. As against Flournoy, LaRoche had no lien. Flournoy had the superior lien, if the note held by Harper had any lien at all. 2. The note held by Harper had no lien at the time he got it. If it

[Flournoy v. Harper.]

ever had any, the payment of it by the maker destroyed the lien.—*Foster v. Trustees of the Atheneum*, 3 Ala. 302. The re-issuing of it by its maker to Harper could not create any lien upon the land.

W. D. ROBERTS, *contra.*—Flournoy was never properly in court. He could not properly come in and make himself a party by petition merely, but should have filed a bill or formulated his petition as a bill.—*Renfro Bros. v. Goetter, Weil & Co.*, 78 Ala. 311; *Marlowe and Wife v. Benaugh*, 60 ib. 323; *Cowles v. Andrews*, 39 ib.125; 78 ib. 573.

STONE, C. J.—In the final decree in this cause, Flournoy was treated as a party, and his rights were so far passed upon, as to hold that he and Harper were each lienees, with equal equities, entitled to share *pro rata* in the proceeds of the lands described in the pleadings. In this the chancellor erred, as we shall hereafter show.

Under the proof in this record, we hold the facts may be summarized as follows: By the terms of the contract of sale from Hawkins to LaRoche, the former became trustee of the title of the lands for LaRoche's benefit, when the latter should pay the purchase-money, and only when such payment should be made. When Hawkins, for value, traded the notes to Flournoy, he took upon himself a second trust, namely: to hold the title for the latter's security and benefit, until the LaRoche notes should be paid to Flournoy. This was the status of the parties and their rights, when Crosby appeared in the arena. The contractual change then agreed upon did not bind or conclude the parties alike, and to the same extent. The agreement between LaRoche and Crosby was, that the latter would take the former's purchase off his hands, assume to pay the two purchase-money notes held by Flournoy, and, in consideration of the cash payment and certain improvements made by LaRoche under his purchase, would relinquish to him forty acres of the land, and execute to him a note for one hundred and twenty-five dollars. If this contract had been closed between LaRoche and Crosby without participation on the part of Flournoy, there would be no difficulty in declaring the relation the parties would have sustained to each other. Flournoy would have held a lien on the whole three hundred acres of land—a first lien —and Crosby would have been bound, as between him and LaRoche, to pay Flournoy's claim. Subject, and subordinate to that first lien in favor of Flournoy, LaRoche would have been equitably entitled to the forty acres reserved from sale to Crosby, and to a vendor's lien on the remainder to

32

secure the payment of the note for one hundred and twenty-five dollars.

The negotiation did not end with this agreement. Flournoy was brought into it, consented in part, and the modified contract was then consummated by executing written evidence of its terms. Flournoy surrendered to LaRoche all claim to forty acres, and had conveyance made from Hawkins directly to him. The bond for title Hawkins had made was surrendered up, and at Flournoy's instance, title to the residue—two hundred · and sixty acres—was conveyed to Crosby by deed from Hawkins, reciting the renewal notes given by Crosby, as the unpaid purchase-money due from the latter to Flournoy. And Flournoy refused to make further concession or release, claiming that he had and should retain a first lien on the two hundred and sixty acres for the payment of the purchase-money due him. Now, whether we treat this as a simple modification of the original contract of sale by Hawkins to LaRoche, or, as a rescission of that contract, by LaRoche's surrender of its evidence, and of all claim on the two hundred and sixty acres made in Flournoy's favor, that the latter might secure himself by a re-sale to Crosby, (it must have been one or the other), in either event Flournoy's lien on the two hundred and sixty acres is paramount to that of LaRoche, and of any other person who might become the owner of the note. Flournoy's claim rests on LaRoche's promise, assumed by Crosby, and is at least the paramount equity which Hawkins had held and transferred to him. Harper's equity is but the residuum left in LaRoche, after satisfying Hawkins, or Flournoy, his transferree: Harper can assert no greater equity, than LaRoche could himself have asserted. It results that the chancellor erred in holding that Harper's equity is equal to that of Flournoy.— *Young v. Hawkins*, 74 Ala. 370.

The alleged payment of the La Roche note, we think, can not be maintained. Interpreting the testimony of Crosby and Dr. Rushing in connection—they do not materially differ —the real transaction was an exchange by Rushing and Harper of their judgments against La Roche for Crosby's note, effected through Crosby, acting as their agent. The defense of payment by Crosby to Harper's claim, is not made good.

As this case must return to the Chancery Court for further proceedings, we feel it our duty to point out certain irregularities, which have been fallen into in its preparation. The chancellor held the two liens to be of equal dignity. Had he been correct in this, then, as a vendor's lien is a unit, and can not be twice enforced, Flournoy would have

been a necessary party.—*Sims v. Sampey*, 64 Ala. 230 ; s. c., 68 Ala. 588. This principle does not apply in this case.

We have shown above that Flournoy has a primary, and Harper a secondary lien. Harper's claim is simply a lien on Crosby's equity—his right to redeem, or to acquire the property, by paying Flournoy the purchase-money due him. Harper was the junior incumbrancer, and as such had the right to enforce his lien against the interest which remained in Crosby, without making the senior incumbrancer a party. And, enforcing his lien in such form, he would have left Flournoy's lien in all respects unimpaired and unchanged. *Fenno v. Sayre*, 3 Ala. 458 ; *Glidden v. Andrews*, 10 Ala. 166 ; *Hall v. Huggings*, 19 Ala. 200 ; *Hunt v. Acre*, 28 Ala. 580.

If this case had been as the chancellor supposed it was— one of equal equities—there was no method of forcing complainant, Harper, to make Flournoy a party, or of having him made a party against Harper's consent. The most that could have been done would have been to dismiss his bill, if he refused to bring in a necessary party.—*Renfro v. Goetter, Weil & Co.*, 78 Ala. 311 ; *Cowles v. Andrews*, 39 Ala. 125. And if a party succeeds on petition in having himself made a party, his petition is not pleading, and is no step towards putting the case at issue. When a party is made a defendant on his own motion or petition, his first step is to answer ; and then he may file a cross-bill, if he wishes affirmative relief.—*Lehman v. Dozier*, 78 Ala. 235. Harper, however, being a junior incumbrancer, it is not clear that he can force Flournoy to come in and foreclose his lien.—*Kelly v. Longshore*, 78 Ala. 203.

This is a small case, and protracted litigation will rapidly consume what there is in it. Would it not be better that, by consent, the case be tried and the equities settled without reference to the present pleadings, as if proper pleadings had been filed, and proper issues joined? If improper steps have been taken, justice can be done by decreeing the costs of such erroneous proceedings against the party committing the error.

Reversed and remanded.