# Gay, Hardie & Co. *v.* Brierfield Coal & Iron Co.

*Bill in Equity by Simple-Contract Creditors, against Insolvent Corporation and Trustee of Mortgage Bondholders.*

1. *Conflict of jurisdiction, by suit pending in another court.*—The pendency of a suit in a Federal Circuit Court, against an insolvent corporation and its mortgage bondholders, under a bill filed by the trustee in the mortgage and deed of further assurance; in which suit the succeeding trustee, by appointment of the court, has been allowed to issue receiver's certificates, declared to be a first lien on the property, and a decree of foreclosure and sale has been rendered, without any effort to collect the outstanding indebtedness of the stockholders, who are also the principal bondholders,—does not oust the jurisdiction of a State Chancery Court to entertain a bill by simple-contract creditors of the corporation, who were not parties to that suit, and could not properly assert their rights therein, against the corporation and the trustee, assailing the mortgage bonds as having been issued without consideration, in fraud and violation of constitutional provisions, and the judicial proceedings as fraudulent and collusive; but nothing is decided as to the character and extent of the relief which may be granted under such a bill, except that the court can not interfere with the possession of the property by the trustee or receiver.

2. *Local jurisdiction; waiver of objection.*—If a bill against an insolvent corporation and the trustee for its mortgage bondholders,

appointed by another court, be improperly filed in the county in which the trustee resides, on the ground that he is not a material defendant (Code, § 3421), the objection is waived by the defendants' appearance, filing demurrer on other grounds, consent to transfer of cause to another county, submission on demurrer, and raising the objection for the first time in the appellate court, on application for rehearing.

APPEAL from the Chancery Court of Jefferson.

Heard before the Hon. THOMAS COBBS.

The bill in this case was filed August 19, 1889, in Colbert county, by Gay, Hardie & Co., a mercantile partnership doing business in the city of Montgomery, as creditors of the Brier-field Coal & Iron Company, in behalf of themselves and other creditors who might come in and make themselves parties, against said corporation, and against Wm. L. Chambers, as trustee for the mortgage bondholders under appointment by the Circuit Court of the United States for the Middle District of Alabama; and sought relief as stated more particularly in the opinion delivered by the judges of this court. The cause was transferred, by consent of parties, to Jefferson county, and was there heard on demurrers interposed by each of the defendants. The court sustained the demurrers, and dismissed the bill; and this decree is here assigned as error.

ALEX. T. LONDON, for appellants.—(1.) A person whose rights are or may be affected by a judgment or decree, to which he is not a party, may impeach it in equity on the ground of fraud.—Bigelow on Fraud, 90; *Michaels v. Post*, 21 Wall. 426; *Rand v. Walker*, 117 U. S. 345. The decisions of this court fully support this proposition.—*Eslava v. Eslava*, 50 Ala. 32; *Stallworth v. Blum*, 50 Ala. 46; *Lee v. Lee*, 55 Ala. 590; *Dunklin v. Harvey*, 56 Ala. 177; *Dunklin v. Wilson*, 64 Ala. 162; *Humphries v. Burleson*, 72 Ala. 1. (2.) The principle is conceded to be well settled, that a State court can not take jurisdiction so as to affect or interfere with the possession or control of property which is being administered by a Federal court, nor a Federal court with property which is being administered by a State Court; the general rule being, that when two courts have concurrent jurisdiction, that which first acquires jurisdiction thereby acquires exclusive possession and control of the matter in controversy. *Keys Man. Co. v. Kimpel*, 22 Fed. Rep. 466; *Wiswall v. Sampson*, 14 How. 52; *Heidritter v. Elizabeth Cloth Co.*, 112 U. S. 303; *Barton v. Barbour*, 104 U. S. 126; *Taylor v. Carryl*, 20 How. 583; *Freeman v. Howe*, 24 How. 450; *Covell v. Heyman*, 111 U. S. 176. (3.) But the complainants invoke the limitation of this principle, which is equally well settled, and

which is thus stated in *Covell v. Heyman*, 111 U. S. 176 : "But all other remedies to which he [a third person] may be entitled against officers or parties, not involving the withdrawal of the property or its proceeds from the custody of the officers and jurisdiction of the court, he may pursue in any tribunal, State or Federal, having jurisdiction over the parties and the subject-matter." This limitation of the general principle, or component part of its proper definition, is recognized in the following cases: *Buck v. Colbath*, 3 Wall. 334; *Watson v. Jones*, 13 Wall. 679; 27 Fed. Rep. 830–43; *Tua v. Carriere*, 117 U. S. 208; *Drury v. Cross*, 7 Wall. 299; *Ball v. Tompkins*, 41 Fed. Rep. 486; *Calhoun v. Lanaux*, 127 U. S. 634; also, Beach on Receivers, § 20. (4.) If this limitation or exception to the general principle extends only to those who were, not only not parties to the former suit, but could not be heard to assert their rights in that suit, the complainants yet bring themselves within the exception. The suit in the Federal court sought the foreclosure of a mortgage; and it is well settled that an adverse claimant can not be made a defendant to such a bill.—*Dial v. Reynolds*, 96 U. S. 340; *Peters v. Bowman*, 98 U. S. 59; *Hambrick v. Russell*, 86 Ala. 199; 1 Dan. Ch. Pr. 339, n. 2; Wiltsie on Foreclosure, § 192.

PETTUS & PETTUS, *contra*.—The bill shows that a Federal court has acquired jurisdiction of the trust estate which is the subject of controversy, and the demurrers invoke the principle, universally recognized, that another court will not interfere with the exercise of that jurisdiction.—*Peck v. Jenness*, 7 How. U. S. 624; *Peale v. Phipps*, 14 How. 368; *Williams v. Benedict*, 8 How. 107; *Wiswall v. Sampson*, 14 How. 52; *Freeman v. Howe*, 24 How. 450; *Stout v. Lye*, 103 U. S. 66; *Randall v. Howard*, 2 Black, U. S. 585; *Amy v. Supervisors*, 11 Wall. 136; *U. S. v. Bootler*, 21 How. 506. These decisions show that the Supreme Court of the United States, the final arbiter of all cases involving a conflict of jurisdiction between Federal and State courts, sustains the jurisdiction of the State court, when first acquired, equally with that of the Federal courts. The decisions of this court are to the same effect.—*Gould v. Hayes*, 19 Ala. 438; *Opelika v. Daniel*, 59 Ala. 215. When the jurisdiction of the court has once attached, it continues until the judgment is satisfied.—*Riggs v. Johnson*, 6 Wall. 166. When a court has once rightfully acquired jurisdiction, all of its subsequent proceedings are valid until reversed.—*Wilcox v. McConnell*, 13 Peters, 498; *Harvey v. Tyler*, 2 Wall. 329.

COLEMAN, J.—Complainants, as simple-contract creditors of the Brierfield Coal & Iron Company, file their bill on behalf of themselves and all other creditors who may come in as such, and contribute to the prosecution of the suit. The case made by the bill, so far as is necessary to be stated, omitting names, is this: That on May 4th, 1882, the Brierfield Coal & Iron Company was organized as a corporate body, with an authorized capital stock of seven hundred and fifty thousand dollars, divided into seventy-five hundred shares of one hundred dollars each, of which amount three hundred and twenty-five thousand dollars was subscribed. That after organization, and before any business was done, the president, in pursuance of a resolution adopted by the stockholders, opened other books of subscription, for the purpose of raising money to purchase the necessary property and machinery and outfit to open and operate coal and iron mines, and manufacture coke and iron, &c. That the last subscription was made under the following agreement: "Now, therefore, the undersigned agree to pay to said company the amounts respectively set opposite our names, in such sums and at such times as the directors of said company may require, and to receive from said company, for each nine hundred dollars paid in, the sum of one thousand dollars in a six per cent. mortgage bond of said company, and nine hundred dollars in the capital stock of said company. Not more than . . . per centum of each subscription to be called for during one month." Four hundred and twenty thousand dollars of this last subscription was taken. No report of the last subscription was made, or in any manner made public. That on 1st September, 1882, the stockholders, who were the subscribers, authorized the issue of five hundred thousand dollars of first-mortgage bonds, to run thirty years, and to bear six per cent. interest, payable semi-annually, and to secure their payment authorized the execution of a first mortgage on all its property and effects. That the bonds were issued, one thousand dollars in bonds for each nine hundred dollars paid in as aforesaid, and also, in addition to the bonds issued, to each subscriber for nine hundred dollars paid, nine hundred dollars of stock were issued which purported on its face to be fully paid for. That the mortgage was executed and duly recorded, and is made exhibit A to the bill. That nothing was paid for the stock and bonds except certain amounts paid on account of the subscription; and that the bonds were issued to, and are now held by, parties having full notice and knowledge of the agreement on which the same were issued, and the larger part are held by the original subscribers. That during the years 1886 and

1887, the Brierfield Coal & Iron Company became indebted to orators for a large amount. That in July, 1887, the said company became financially embarrassed, and the trustee named in the deed of trust, in pursuance of a provision in the deed of trust, demanded and received "a further assurance" to secure the bonds which had been issued, and within a few days thereafter demanded and took possession of all the property of said company; and on the 3d day of August, 1887, the said trustee filed his bill in the Circuit Court of the United States for the Middle District of the State of Alabama, and asked authority from the said Circuit Court to issue certificates, which should be a first lien upon the property of said corporation. That when the bill was filed by the trustee, there was due and unpaid of the subscription for the stock a large amount, to-wit, five hundred thousand dollars, and with the knowledge of these facts, the trustee, with the knowledge and consent of the directors and of said corporation, procured an order of the court for that purpose, and issued sixty-five thousand dollars in certificates, which were to be a first lien or charge upon the property. That on 28th July, 1887, the corporation was insolvent, and after the trustee took possession of the property, it ceased to carry on the business for which it was organized. That the bonds were issued without consideration, and under the laws of Alabama were void. That under the bill filed in the said Circuit Court of the United States, with the consent of the corporation, the court has decreed a foreclosure of the mortgage and further assurance, and a sale of the property. That the debts of the corporation, not included in the mortgage, amount to $150,000, and that the issue of the bonds was a fraud on the creditors, and the "deed of further assurance" was fraudulent and made with intent to hinder, delay and defraud the creditors; and that the bill was filed and prosecuted in the Federal court, and the certificates were issued, for the purpose of hindering, delaying and defrauding the creditors of said corporation. Other facts to show fraud are averred.

The bill states that complainants and the other creditors had no notice or knowledge or information of the terms upon which the bonds were issued, or the consideration of the same, or for the mortgage or further assurance, until after the bill was filed in the Circuit Court of the United States. The bill prays that the bonds be declared fraudulent and void, and that the mortgage and further assurance be decreed fraudulent and void, and the issue of certificates be declared fraudulent, and that the decree of foreclosure and sale be declared fraudulent

and void against complainants, and for an account. Only the trustee and the corporation are made.parties defendant in the present bill.

To the bill, as a whole, the respondents severally demurred, and each assigned several grounds of demurrer; but all raise, and were intended to raise in different ways, the question of the jurisdiction of the Chancery Court, the plaintiff's bill showing that the Circuit Court of the United States, under a bill filed by the trustee, had decreed a foreclosure and sale of the property, which was then unexecuted, and had authorized the issue of the certificates. No other question is raised by the demurrers, and none other will be considered.

The principle is universally acknowledged, that when two courts have concurrent jurisdiction, that which first takes cognizance of the case, has the right to retain it, to the exclusion of the other; that if a trust estate is being administered by a court of competent jurisdiction, or where property is in *gremio legis,* of a court of rightful jurisdiction, no other court can interfere, and wrest from it the possession and jurisdiction first obtained. As was said in *Peck v. Jenness,* 7 How. (U. S.) 624–5, "Where a court has jurisdiction, it has a right to decide every question which occurs in the cause; and whether its decision be correct or otherwise, its judgment, till reversed, is regarded as binding in every other court; and where the jurisdiction of a court, and the right of a plaintiff to prosecute his suit in it, has once attached, that right can not be arrested or taken away by proceedings in any other court. These rules have their foundation, not merely in comity, but in necessity. For, if one court may enjoin, the other may retort by injunction; and thus the parties be without remedy, being liable for a process for contempt in one, if they dare to proceed in the other. Neither can one take property from the custody of the other by replevin, or any other process, for this would produce a conflict extremely embarrassing to the administration of justice."

The rule here declared has been adopted and followed invariably by all subsequent decisions. Many of them, however, have given it a very broad and extensive significance, while others have limited its meaning, and consequently the application of the principle has not in all respects been uniform.

In the case of *Vaughn v. Northrup,* 15 Pet. 1, it was held, that an administrator appointed in one State must account for the assets received by him according to the law of his appointment, and could not be sued in the court of another State for the assets received and held by him in his official capacity. *Williams v. Benedict,* 8 How. (U. S.) 101, was a case where

an estate had been declared insolvent, and the assets were being administered in the State courts for the benefit of all the creditors. It was held, that the property was in *gremio legis*, and not subject to levy by the United States marshal at the suit of a creditor suing in the Federal courts.

In the case of *Peale v. Phipps*, 14 How. (U. S.) 372, commissioners had been appointed to settle up and distribute the assets of an insolvent bank, and it was held that no other court had jurisdiction to interfere at the suit of creditors, and apply the assets to the payment of their claims; that it was the duty of all creditors to apply to the State court which had taken jurisdiction of the settlement and distribution of the assets. The principles declared in this decision are reaffirmed in *Barton v. Barbour*, 104 U. S. 126.

In the case of *Taylor v. Carryl*, 20 How. (U. S.) 583, a writ of attachment issued by a State court had been levied upon a vessel, and the vessel replevied. Suit was afterwards begun in a court of admiralty to enforce seamen's wages, and the writ placed in the hands of a marshal. It was held that the State court having possession first, the possession could not be interfered with by the admiralty court, citing *Hagan v. Lucas*, 10 Pet. 400. In this case, there was a dissenting opinion by Taney, C. J., who recognized the general principle, but held that because of the equities of the claimants (the lien of seamen's wages), of which alone the admiralty court had jurisdiction, the jurisdiction of the admiralty court did not violate the rule. The rule declared by Taney, C. J., seems to be the law in this State, in which it has been declared, that although the Probate and Chancery Courts may have concurrent jurisdiction, yet, if there are peculiar equities of which the Probate Court can not take jurisdiction, then the Chancery Court may proceed, without a violation of the rule.—*Hayes v. Gould*, 19 Ala. 448; *Wilkinson v. Stuart*, 74 Ala. 198.

The case of *Freeman v. Howe*, 24 How. 450, after re-affirming the principle in 7th How. *supra*, declared that property in the hands of the United States marshal, seized by him upon a writ from the Circuit Court of the United States, could not be replevied or interferred with by a writ from a State court, and further held, that the principle did not depend upon the rights of the parties involved, and that it applied to persons who were not parties to the original or first suit. In *Johnson v. Henry*, 6 Wall. 166, it was declared, that the rendition of a judgment did not exhaust the jurisdiction, but that it continued until the judgment was satisfied; that process subsequent to the judgment was as necessary as process antecedent; that process of the State courts could not interfere

with the jurisdiction of the Federal courts, neither the Federal courts with the State court; that where there was concurrent jurisdiction, the one which first had jurisdiction of the matter continued to exercise it without interference.

In the case of *Barton v. Barbour*, 104 U. S. 126, Woods, J., declared, that the rule was not limited to cases where the purpose was to interfere with the possession of the receiver, but extends to suits in assumpsit, or other cases where the effect of the suit or judgment against the receiver would be to diminish the assets in his hands. Miller, J., in a dissenting opinion, uses the following language: "I know of no principle or precedent, whereby a court of law, having before it a plaintiff with a cause of action of which it has jurisdiction, and a defendant charged with an act also within its jurisdiction, is bound, or even is at liberty, to deny the plaintiff his lawful right to a trial because the defendant is a receiver, appointed by some other court, and to leave the suitor to that for remedy;" and, quoting approvingly from *Kinny v. Cracker*, 19 Wis. 74, continues: "There can be no room to question this conclusion [the right to sue a receiver without leave of the court], in all cases where there is no attempt to interfere with the actual possession of property which the receiver holds under the order of a court of chancery, but only an attempt made to obtain a judgment at law in a claim for damages."

In *Wiswall v. Sampson*, 14 How. (U. S.) 52, 66, it was held, that property in the hands of a receiver for one court could not be sold so as to pass title to the purchaser, under executions issued from another court. If such a sale was pronounced valid, it would have the effect to wrest from another court its rightful possession of the property.

In *Buck v. Colbath*, 3 Wall. 334,—opinion by Miller, J.— it was held, that whenever property has been seized by an officer of a court, the property is in possession of the court, and no other court can take possession of it. This general principle has its limitations. It is only while the property is in the possession of the court, actually or constructively. When the litigation is ended, or the possession discharged, other courts can then deal with it. No contest can then arise about the possession. Officers of the court seizing property described in the mandate, such as writs of replevin at common law, orders of sequestration in chancery, or process *in rem*, will be protected; but, when the writ issued is to be levied generally, without particular instructions, or description of the property to be taken in possession or levied upon, and the officer exercises a discretion in the execution of the

writ, he may be sued in trespass for an abuse of the discretion, or a wrongful use of the writ, but no suit can be maintained to take from him the possession of the property.

.The Chancery Court of Louisville, Ky., by a decree directed its marshal to deliver the church (the matter of controversy) to Watson and others. While this suit was pending, and the church was in the possession of the marshal of the Chancery Court, Jones and others filed a bill in the United States court, to get possession of the church, and to enjoin the marshal from delivering the church to Watson, and to enjoin Watson from taking possession of the church. In *Watson v. Jones*, 13 Wall. 713, Miller, J. said: "The decisions of this court in the cases of *Taylor v. Carryl*, *Freeman v. Howe*, and *Buck v. Colbath*, are conclusive, that the marshal of the Chancery Court can not be displaced as to the actual possession of the property, because that might lead to a personal conflict between the officers of the courts for the possession; and the cases of *Diggs v. Walcott*, and *Peck v. Jenness*, are conclusive against any injunction from the Federal court forbidding Watson *et al.* from taking possession of the church which the decree of the Chancery Court required the marshal to deliver to them." But the court held, under the prayer for general relief, the court was authorized to grant any relief to the plaintiff, authorized by the pleadings and proof, "which did not enjoin the defendants Watson and others from taking possession of the church, or which did not disturb the possession of the marshal of the Louisville Chancery Court." We do not cite this case as indorsing altogether the conclusion reached by the court in the relief granted, but as an authority recognizing and declaring the limitations placed upon the general rule laid down in 7th How. *supra*, and which has been followed in so many decisions.

The case of *Krippendorf v. Hyde*, 110 U. S. 276, arose in this way. Hyde & Bro. brought suit in the United States Circuit Court against Frey *et al.*, and sued out an attachment, which was levied upon a large stock of goods in the possession of Krippendorf, who claimed them as his own. Krippendorf executed a forthcoming bond to the marshal. After judgment against Frey, the goods having been disposed of, Krippendorf paid their value to the marshal. He then filed his bill on the equity side of the same court in which the attachment suit was brought, made the marshal and attaching creditors defendants, set up his claim to the money in the hands of the marshal, and prayed that the marshal be enjoined from paying it over to the creditors. The court held, that Krippendorf might have maintained trespass against the mar-

shal, but that he could not replevy the property in a State court, as it must be regarded as in the custody of the United States Circuit Court. It was held that the bill was maintainable, not as an original bill in equity, but as ancillary to the principal action at law, in which the attachment issued, and should be regarded as merely a petition in that cause, . . and on account of the peculiar relations of the courts of the State and the United States, it was permissible as a necessary result to prevent a failure of justice, and to furnish in such cases a certain, adequate and complete remedy, against injurious abuses of the process of the court, by supplying a means in the principal suit of trying the title to property in the custody of the law.

The case of *Covell v. Heyman*, 111 U. S. 176, re-affirms the doctrine declared in *Krippendorf v. Hyde*, 110 U. S. 276, and holds that it is an error for a State court to permit the recovery of the possession of property by its rightful owner against a marshal of the United States, held by him by the levy of an attachment or execution issued from a Federal court; that the property is in the custody of the law, and its possession can not be disturbed by the process of any State court. This case further holds, that the owner could maintain suit in trespass against the marshal, or by petition in the court from which the writ issued to the marshal, the owner could be fully protected, either in his rights of ownership to the property or the money in the hands of the marshal; citing a number of authorities, which have been referred to and quoted from in this decision.

In the case of *Heidritter v. Oil Cloth Co.*, 112 U. S. 294, Heidritter brought suit in assumpsit in the State of New Jersey, and in the same suit averred facts to fix and establish a mechanic's lien upon a building of the defendant. At the time the suit was commenced to fix and enforce a mechanic's lien, the premises in controversy were in the actual possession of a United States marshal, having been seized by the collector of Internal Revenue, and were being held, pending the prosecution of a suit to have the premises condemned and declared forfeited for having been unlawfully used as a distillery. The building was sold under a judgment of the State court, and plaintiff, Heidritter, became the purchaser. The defendant held under the marshal's deed—the premises having been sold by him on execution from the Federal court. The court held, that the proceedings in the State court to enforce the mechanic's lien took place when the property was in the exclusive custody and control of the District Court. The substantial violation of the jurisdiction of the District Court consisted in

[Gay, Hardie & Co. v. Brierfield Coal & Iron Co.]

the control over the property in its possession assumed and asserted in commencing the proceedings to enforce against it the lien claimed by the plaintiffs, prosecuting the claims to judgment, and consummating them by a sale; citing *Wiswall v. Sampson, supra,* and others. The opinion proceeds, however, as follows: "But it is to be understood, as a qualification of what has been said, that we do not mean to decide that the plaintiff in the actions in the State court might not, without prejudice to the jurisdiction of the District Court, commence their actions, so far as that was a step necessary by the mechanic's lien law of New Jersey, for the mere purpose of fixing and preserving their rights to a lien; provided always, they did not prosecute their actions to a sale and disposition of the property, which, by relation, would have the effect of avoiding the jurisdiction of the District Court under its seizure. The distinction seems reasonable and just, and is supported by decisions;" citing *Clifton v. Foster,* 103 Mass. 233; *Williams v. Benedict,* 8 How. 107; *Yonly v. Lavender,* 21 Wall. 276.

In the case of *Walling v. Miller,* 108 N. Y. 172; 2 St. Rep. 400, it was held, that the possession of the receiver must not be disturbed, except by permission of the court, by persons having adverse, though paramount claims, and a sale under execution of property in the custody of a receiver, though under a levy made prior to his appointment, is void, unless authorized by the court; that before the sale was made, leave to make the sale should be granted by the court which appointed the receiver; that the appointment did not destroy the lien, and application might also be made to the court for payment of the execution, out of the proceeds of the sale made by the receiver.

In the case of *Drury et al. v. Cross,* 7 Wall. 299, the directors fraudulently procured a mortgage to be foreclosed for a much larger sum than was due, of which by a fraudulent combination with the purchaser they were to be benefitted. Upon a bill by the creditors, it was decreed that the purchaser should be held liable as a trustee for the creditors.

In the case of *Stout v. Lye,* 103 U. S. 668, the general principle of law under consideration was conceded. The real question before the court for decision, and which was decided, was whether the State court or the Federal court first had jurisdiction; and it was held that by the filing of the petition, and the proceeding in the State court for the foreclosure of the mortgage, that court was the first to assume and exercise jurisdiction; and the court further held, that the decree ascertaining and fixing the amount of the indebtedness of the

mortgagor to the mortgagee, was conclusive and binding upon other creditors of the mortgagor, so far as it fixed a liability of the mortgagor and its amount to the mortgagee. The principles of law raised by the demurrers of the respondents in the case under consideration were not involved in the case of *Stout v. Lye, supra.*

The *Holladay Case,* in 27 Fed. Rep. 830, was a bill in equity in the Federal court by Hickox against Holladay, to set aside a fraudulent conveyance made by Ben Holladay to his brother Joseph Holladay. After disposing of other questions which arose in the case, the opinion proceeds as follows: "The answer of Holladay also contains an allegation in bar of this suit, to the effect that on November 7, 1883, and prior to the commencement thereof, the Circuit Court of the State for the county Multnomah, in a suit then pending therein between Ben Holladay and Joseph Holladay, appointed a receiver of all the property mentioned in the bill herein, who is now in possession of the same as such receiver, which suit is still pending in said court. In support of this defense, counsel submit the proposition, that while property is in the hands of a receiver appointed by a court, no other court can acquire or take jurisdiction of a suit concerning such property, and cites a number of authorities in support thereof. But the proposition is altogether too broad, and is unsupported by the authorities cited. The receiver has no right in the property, but only the possession thereof. So long as that is not disturbed or questioned, parties may litigate in the same court, or elsewhere, questions concerning the ultimate right and title to the property. And, therefore, notwithstanding the suit of *Holladay v. Holladay,* and the possession of the receiver therein, this court may take jurisdiction of a suit to set aside or postpone an alleged fraudulent conveyance of any of this property by Ben Holladay which hinders or delays the plaintiff in the enforcement of his judgment against said Holladay. In *Buck v. Colbrath,* 3 Wall. 334, this question is examined by Mr. Justice Miller, and the conclusion reached, that the rule among courts of concurrent jurisdiction, that the one which first obtains jurisdiction of a case has the exclusive right to decide every question arising therein, is subject to limitations. See, also, *Andrews v. Smith,* 19 Blatchf. 100; s. c., 5 Fed. Rep. 833.

"The object of the suit in the State court between the two Holladays is not stated in the answer. But, in the nature of things, it can not involve the matters in controversy here, and particularly the question of whether the plaintiff is entitled, as a creditor of Ben Holladay, to have these conveyances to

[Gay, Hardie & Co. v. Brierfield Coal & Iron Co.]

Joseph Holladay set aside, or postponed in favor of the judgment against the former. If this court should find that these conveyances were made with intent to hinder and delay the plaintiff in the collection of his demand, under such circumstances as makes the grantee therein a participant in the fraud, it would be its duty to decree that they be set aside, or postponed in favor of the plaintiff's judgment. So far there would be no interference with the process of the State court, or the possession of the receiver. Whether this court will stop there, and remit the plaintiff to his execution out of the same State court on his judgment therein, or provide for the sale of so much of the property by a master as may be sufficient to satisfy the same, together with the costs incurred in this court, will depend on circumstances. The latter course can not be pursued while the receiver is in charge, for that would necessarily interfere with his possession. But so long as the plaintiff's right to enforce the judgment, and for the amount found due him, depends on a decree of this court, it is proper, and very convenient, that any disposition of the property in question to satisfy the same should be made on its process. And provision may be made in the decree that the sale shall be delayed until the receiver is discharged, or that the plaintiff may apply on the footing of the decree, for an order of sale as soon as such discharge takes place."

In the case of the *Daniel Kaine*, 35 Fed. Rep. 786, Paine recovered a judgment in the State court of Pennsylvania against James Linn, a tenant in common of the steam-boat *Daniel Kaine*, execution issued, and the sheriff made this return: "Levied upon all the right, title and interest of the defendant in the steam-boat *Daniel Kaine*, in the hands of the United States marshal, and gave notice to the United States marshal (Miller) of said levy, and made claim upon proceeds of boat." After stating these facts, the court proceeds: "Was it then beyond the reach of his execution creditors whose judgment was in the State court? It is, indeed, undeniable, that this court has obtained exclusive jurisdiction over the vessel for all the purposes of the suit which had been here instituted (*Heidritter v. Oil Cloth Co.*, 112 U. S. 294; 5 Sup. Ct. Rep. 135); and it is not to be doubted that property once attached or levied on is in the custody of the law, and is not liable to be taken by another execution in the hands of a different officer, especially if that officer is acting under a different jurisdiction. (*Hagan v. Lucas*, 10 Pet. 400; *Taylor v. Carryl*, 20 How. 583; *Freeman v. Howe*, 24 How. 450). It will be perceived, however, that the sheriff's levy here did not involve the disposition or control of the property. It was

made in manifest subordination to, and in recognition of the right of the marshal to hold and dispose of the vessel. Nor was actual seizure necessary to give efficacy to the sheriff's levy, as it was made, not upon the *res* itself, but merely upon the defendant's interest.—*Srodes v. Caven*, 3 Watts, 258; *Welsh v. Bell*, 32 Pa. St. 13. But the execution creditor here need not stand on the sheriff's levy. In Pennsylvania, a *fi. fa.* binds all the defendants' personal property in the bailiwick, whether there is a levy or not; and the lien attaches from the time the writ is put in the sheriff's hands.—*Duncan v. Mc-Cumber*, 10 Watts, 312. The issuing of the execution from the court of Common Pleas was not an interference with the marshal, and in nowise tended to bring about a conflict of jurisdiction. What good reason, then, is there for denying to this execution creditor the benefit of a lien? In *Heidritter v. Oil Cloth Co.*, *supra*, the court noticed and carefully distinguished between the proceedings in the State court for the purpose of declaring and establishing the mechanic's lien, and the subsequent proceedings involving the sale of the property, the latter only being adjudged void."

In the case of *Ball v. Tompkins*, 41 Fed. Rep. 486, after stating the general principle, that "this court can not invade the possession of the subject-matter of controversy already taken by the State court having concurrent authority, and in the exercise thereof; for the rule is here as elsewhere, that the court which first acquired possession of the subject will retain it, and the power to dispose of it by its own adjudication, citing 8 How. *supra;* 24 How. *supra;* 21 Wall. 276, proceeds as follows: "And this brings us to the pivotal question in the present inquiry: What is the nature and character of the possession of the State or Federal court which excludes the exercise of authority over the subject or thing by the other? From the authorities on this subject (which in the Circuit Courts are not altogether harmonious), and from the reasons for the rule, I apprehend it to be, substantially, that the possession contemplated as sufficient to make it exclusive is that which the court by its process, or some equivalent mode, has, either for the direct purpose of the proceeding, or for some other purpose ancillary to the main object, drawn into its dominion and custody some thing. That thing may be corporeal or incorporeal. a substance, or a mere right. These may be the subject-matter of jurisdiction in a pending cause, which often proceeds from the beginning to the judgment without the court's having taken actual dominion of any thing. But there is no exclusive jurisdiction over such a matter. The result may be a judgment which will establish a right, but the court has not

[Gay, Hardie & Co. v. Brierfield Coal & Iron Co.]

had any possession. The pendency of a controversy in a suit in a State or Federal court is no bar to a suit in the other court involving the same controversy (*Stanton v. Embry*, 93 U. S. 548), and each will proceed in its own course to a judgment establishing the right. The control which each court has over its own processes has always been found adequate to prevent mischief from diverse judgments in the several jurisdictions. But, in proceeding on its way, whenever either court finds that the other has already taken actual dominion over some subject, it will let the thing alone, so long as that dominion is retained, and proceed, if there be enough material besides to support the exercise of its jurisdiction, and the pursuit may reach fruit. If not, it will stop.

There are many cases in the Supreme Court Reports where this subject has been discussed, and these principles applied. Some of them have been already cited. Others are *Heidritter v. Oil Cloth Co.*, 112 U. S. 294; 5 Sup. Ct. Rep. 135; *Railroad Co. v. Vinet*, 132 U. S. 478, *ante* 155.

Under the act of Congress of March 3d, 1887, receivers appointed by the courts of the United States may now be sued without leave in any court having jurisdiction over the subject.

No court can interfere with the custody of property held by another court through a receiver, but may establish by its judgment a debt against the receivership, which must be recognized, even by the court appointing the receiver, and is not open to revision by it, if the court rendering the decision had jurisdiction of the subject-matter and the parties. The manner in which it shall be paid, and the adjustment of the equities between all persons having claims on the property and effects in the hands of a receiver, must be under the control of the court having custody through its receiver; but this does not affect the jurisdiction of other courts conclusively to establish by judgment the existence and extent of a claim. *Dillingham v. Russell*, 73 Texas, 47; 15 St. Rep. 753.

It is a well established rule, that when there is a fund in court for distribution, creditors, or those entitled to share in the distribution, may come in by petition, and have their claims adjusted by the court administering the trust, and receive their distributive share. Such were the facts in the case in *Williams v. Benedict*, 18 How., and *Peale v. Phipps*, 14 How., and some others cited. But, when a bill is filed to foreclose a mortgage, the proper parties are the mortgagor and mortgagee. The fund primarily is applied to the mortgage debt, the balance to the mortgagor. A stranger to the mortgage, in the absence of a statute or rule of court, can not have

himself made a party, without the consent of the complainant. *Renfro Bros. v. Goetter, Weil & Co.*, 78 Ala. 313; *Flournoy v. Harper*, 81 Ala. 494; *Hambrick v. Russell*, 86 Ala. 199.

Neither do the complainants, in the case under consideration, have that relation to the matter or parties in the foreclosure suit, which would enable them to file a bill of review of the decree in that case, and show error apparent on the record; or by bill in the nature of a bill of review, and show that they were overreached and defrauded by its procurement. They were neither parties nor privies to that proceeding, and have no title or claim of ownership to the property conveyed by the mortgage.— *Whitney v. Bank*, 13 Pet. 1; *Humphreys v. Burleson*, 72 Ala. 4; *Dunklin v. Harvey*, 56 Ala. 181; *Newlin v. McAfee*, 64 Ala. 364; *Curry v. Peebles*, 83 Ala. 226; *Lee v. Lee*, 55 Ala. 602; *City of Opelika v. Daniel*, 59 Ala. 215.

Extracts at length have been quoted from leading cases, that the reasoning and conclusions of the different courts construing, limiting and applying the general principle stated in 7 How. *supra*, may be the better understood and appreciated. All the authorities recognize the importance of carefully preserving the boundary line between courts of concurrent jurisdiction, in order to prevent conflicts, and to preserve in harmony their relations to each other. Harmony between the State and Federal courts is the life of our complex system of government, and should be guarded by a "flaming sword which turns every way." To prevent abuse of the principle, and the successful perpetration of injustice or fraud, through forms of law, courts accord to suitors and litigants all necessary latitude; and they are not restricted to any one forum for the adjudication of any question or right, provided only that such adjudications are not upon questions pending in another concurrent court which had prior jurisdiction, and provided that its writs or process shall not hinder the performance of any lawful mandate of such concurrent court, or interfere with or disturb the possession of any subject-matter then in *gremio legis*.

Possibly plaintiffs might sue the Brierfield Coal & Iron Company in a court of law, and recover judgment, and have execution as in the case of the steamboat *Daniel Kaine*, in 35 Fed. Rep., *supra*, or file a bill on the judgment as in the Holladay case, 27 Fed. Rep., *supra;* or, when necessary to fix and establish a lien, they may proceed for this purpose as in the case of *Heidritter v. Elizabeth Oil Co.*, 112 U. S. 294, *supra;* and in neither instances transgress the domain of

[Gay, Hardie & Co. v. Brierfield Coal & Iron Co.]

the United States court. Any attempt to enforce the judgment or lien thus established, by interfering with the possession or subject-matter under the control of the concurrent court, would be nugatory.

In accordance with the principle declared by Miller, J., in the case of *Jones v. Watson*, the court should grant any relief authorized by the pleadings and proof, which did not conflict with the decree of the United States court, or disturb the possession of the property in the hands of the court, although the bill may ask for some relief which perhaps can not be granted.

It may be, that notwithstanding the complainants do not claim any ownership in the property conveyed by the mortgage, or may not have that relationship to the foreclosure suit which, under the decisions of this State, cited above, would authorize them to file a bill of review, or an original bill in the nature of a bill of review, to correct or set aside the decree rendered in the Circuit Court of the United States, for error apparent, or for fraud in its procurement, under the liberal system declared in the case of *Krippendorf v. Hyde*, *supra*, to prevent abuse and injustice, plaintiffs might get relief by filing a petition as ancillary to the foreclosure suit. We express no opinion as to that question. We do hold, however, that if the trustee in the deed of trust, and the defendant corporation, the Brierfield Coal & Iron Company, and the stockholders and directors, with the knowledge and assistance of the stockholders, fraudulently combined and colluded together to hinder, delay and defraud the creditors of the defendant corporation, and to carry out this fraudulent purpose procured the certificates mentioned in the pleadings to be fraudulently issued, and fraudulently procured the execution of the deed of further assurance; and that the bonds secured by the trust were without consideration, and issued in violation of law, of which the holders had notice, and a decree of foreclosure of the deed of trust was procured in the United States court for the same fraudulent purpose and intent, which facts seem to be substantially averred in the bill, and which, on demurrer, must be regarded as true, the complainants, as creditors, are entitled to relief in some court. We further hold, that the jurisdiction of the Chancery Court of the State of Alabama of all these matters is full and complete, and unless these questions are pending in some other court of concurrent jurisdiction, in such way and manner as may be pleaded in bar to this suit, the complainants, upon proof of the averments of the bill, are entitled to every relief in this court. *Jones v. Watson*, 13 Wall. 678, *supra*.

In granting relief, if the pleadings and proof justify it, the Chancery Court will be controlled by the limitations and principles herein declared, so as not to conflict with the jurisdiction of the Federal court. .

We do not wish to be understood as intimating that the bill is in all respects without defect as to parties, or that a proper decree could be rendered upon the pleadings in their present shape, or that any decree would affect the rights of bondholders, or holders of the certificates, who have not been made parties to the cause. We simply adjudge the grounds of demurrer assigned, being against the bill as a whole, are not well taken, and should have been overruled.

Reversed and remanded.

CLOPTON and WALKER, JJ., not sitting.

STONE, C. J., Concurring.—In this case, the chancellor sustained the demurrer to the bill, and no amendment being offered, there was a decree declaring the bill contained no equity of which that court could entertain jurisdiction. From that interlocutory decree the present appeal is prosecuted. The demurrer admitted the truth of every material averment that is well pleaded.—*Flewellen v. Crane*, 58 Ala. 627. We will treat the material averments as admitted facts.

The Brierfield.Coal & Iron Company was incorporated in 1882, with an authorized capital stock of seven hundred and fifty thousand dollars. The amount of stock actually issued and disposed of is not expressly shown. It is shown, however, that by a resolution of the board of directors, adopted soon after the organization, five hundred thousand dollars of the mortgage bonds of the company were issued, having thirty years to run, bearing six per cent. interest, and the interest to be paid in semi-annual installments. The payment of the interest and principal of these bonds was secured by a first mortgage, executed and recorded, conveying all the property of the corporation, real and personal. The mortgage created a trustee, and clothed him with authority to execute its powers and purposes. The bonds are not negotiable securities, according to the averments of the bill.

This issue of five hundred thousand dollars of coupon bonds was not intended for sale in the market as bonds. Stock in the company to the amount of four hundred and fifty thousand dollars was ordered to be sold, and was sold at par, with the agreement and understanding, that to every purchaser of nine hundred dollars of the capital stock, there should be delivered, and was delivered, one thousand dollars of the bonds, on no

consideration other than the nine hundred dollars of stock, purchased and promised to be paid for. So, when the stock should be paid for in full, the subscribers, or owners of the shares of the capital stock, would have received, for nine hundred dollars paid out, nine hundred dollars of the paid up capital stock of the company, and the corporation's coupon bond for one thousand dollars.

To what extent calls were made for payment of this four hundred and fifty thousand dollars of stock, or any other stock taken in the company, was not known to the complainants, and is not shown in the bill of Gay, Hardie & Co. It is averred, however, that the sum of five hundred thousand dollars of the subscriptions for stock remain unpaid. These bonds for five hundred thousand dollars were subscribed for by eight persons, in unequal amounts, who still claim to own the same, or the great bulk of it. The husband of one of these eight is named as trustee in the mortgage given for the security of the bonds.

Pursuant to authority and power expressed in the said first mortgage, the trustee, in July, 1887, obtained from the Brierfield Coal & Iron Company a further assurance for the security of said bonds, which described and conveyed to him, for such purpose, all the real and personal property of every description, owned by said corporation. In less than a month after obtaining this further assurance, to-wit, in August, 1887, the trustee, or assignee named in the mortgage, filed a bill in the Circuit Court of the United States, and made defendants to his bill the said Brierfield Coal & Iron Company, the said original stock and bond-holders, and certain named creditors of the corporation. The bill set forth the said five hundred thousand dollars of bonds as a debt of the corporation, and certain other alleged debts incurred in running the works of said Iron & Coal Company, for which Peters, the president of the corporation, had rendered himself or his property liable. According to the averments of the bill, a considerable part of the subscription of four hundred and fifty thousand dollars of stock has not been collected, and no excuse is rendered why this has not been done. The object of the bill was to have the effects of the corporation placed in trust, or in the hands of a receiver, and to have that trustee or receiver clothed with authority to borrow money, and to that end, to issue certificates of indebtedness. This, for the purpose of keeping the works of the corporation in operation, and to meet current expenses. There was no expressed wish or prayer to have the mortgage foreclosed and the property sold at that time; bue the averred object was to save the property by continuing tht

11

works in operation, and thus paying the corporation's debts. The bill and its prayer, however, were so framed, as that a foreclosure and sale could be effected under it.

The Circuit Court of the United States took jurisdiction of the case, placed the property in the hands of a trustee, or receiver, and authorized him to issue certificates of indebtedness, which were declared to be a first lien on the property and its earnings. Under this authority certificates of indebtedness were issued, to the extent of sixty-five thousand dollars.

In 1889, the Circuit Court of the United States made a decree in said cause foreclosing said mortgage and further assurance, and ordering an account to be taken of said bonded and other named indebtedness of the corporation, and ordering a sale of its property and effects. Under this decree, the property was advertised to be sold, the sale to take place August 19, 1889. On that day the present bill was filed in the State Chancery Court, by a non-secured creditor of the Brierfield Coal & Iron Company.

The bill in the present case, filed by Gay, Hardie & Co., sets forth that during the years 1886 and 1887 the said Brierfield Coal & Iron Company became indebted to them for goods, wares and merchandise sold to said corporation, in the sum of near eleven thousand dollars of principal indebtedness. It charges that said alleged bonded indebtedness of five hundred thousand dollars was issued and incurred in direct contravention of the Constitution and statutes of the State of Alabama—that they were issued upon no consideration whatever, and are fraudulent. It charges further, that said suit by the trustee to foreclose said mortgage and further assurance was and is, by reason of the legal invalidity of the bonds, fraudulent, and instituted and prosecuted with intent to delay, hinder and defraud the creditors of the corporation, and that the corporation is insolvent. The bill is so framed as that other creditors can come in and make themselves parties, and share in the fruits of the recovery. The prayer and purpose of the bill are to have the alleged bonded indebtedness annulled as fraudulent, and to have the effects of the corporation applied to its *bona fide* debts.

It will thus be seen that, before this suit was instituted, the Circuit Court of the United States, by virtue of the bill previously filed in that court by the trustee, had taken jurisdiction of the affairs of the corporation, and, through a receiver, or *quasi*-receiver of its own appointment, had taken control and possession of its entire effects; and that possession had not been relinquished by a final determination of the suit.

The present bill makes only two defendants, the Brierfield Coal & Iron Company, and the trustee in the mortgage, the complainant in the said suit in the Circuit Court of the United States.  Each of these defendants demurred to the bill, specifying several grounds of demurrer, but they are all reducible to a single proposition, namely : that the Circuit Court of the United States having acquired jurisdiction and possession of the effects of the corporation, no other court can, by any process at its command, interfere with that possession, or prevent or obstruct that court in the complete administration of the effects of the corporation.

Ours is a compound government.  We have a Federal government, which, for certain specified purposes and to a certain extent, makes us one.  The dominating aim of this union of States had two main objects :  *First*, in all our relations, political and commercial, with other countries, we are a unit.  *Second*, in those matters which pertain to the harmony, good neighborhood and equal civil rights of the citizens of the several States, out of which conflicts and collisions might arise, the General Government is clothed with all the power which the framers of our institutions deemed necessary to prevent such conflicts and collisions.  But the powers of the Federal Government are the creatures of grant.

Each of the governments, Federal and State, has a judiciary, a necessary arm for the enforcement of delegated power and preservation of good order.  And in the administration of justice, controversies may and do arise, in the adjustment of which the courts of the two governments have concurrent jurisdiction.  Here we approach the danger line, and we should take our steps cautiously, lest we tread on forbidden ground.  Properly administered, each tribunal can exercise all its rightful jurisdiction and grant all rightful relief to the suitors before it, without abridging the equal rights of other equally meritorious suitors before other tribunals, having equal power.  The difficulty lies in determining when, or from what arbiter the mandate can be authoritatively uttered, "thus far shalt thou go."

That two material bodies can not occupy the same space at the same time, is an established law of physics.  If this impossible feat be attempted, collision must be the result.  So, when one court has acquired, and is in the exercise of jurisdiction over a subject-matter *inter partes*, no other court of simply concurrent power can take jurisdiction of that same subject-matter between the same parties.  And the rule is much more inflexible, when, under some order or process of its own, the court first acquiring jurisdiction has obtained

possession of the *res,* which is the subject of the suit.   When
this is the case, the thing is in the custody of the court, and
until disposed of by final judgment or decree, that possession
can not be interfered with by any other court of concurrent
jurisdiction, whether its powers be invoked by a party to the
first suit, or by a stranger to that litigation.   This, it has
been justly said, is not alone a duty of comity.   It is an
edict of necessity.   Its non-observance would lead to all the
conflict and confusion so well expressed by Justice Grier in
*Peck v. Jenness,* 7 How. 612.

The exhaustive opinion of my brother COLEMAN in this case has
rendered it not only unnecessary but improper that I should
again collate the authorities.   I fully concur with him in his
statement of the rule, and the extent of it.   The reason of the
rule exists in the prevention of collisions between courts of
concurrent jurisdiction.   Neither the reason nor the rule
finds any field of operation, when the proceedings in one
jurisdiction do not in any manner interfere with those in the
other.   And, in this connection, it is immaterial whether the
two courts of concurrent jurisdiction derive their powers
one from the Federal and the other from a State government,
or both from the same government.   The same rule and
measure of non-interference apply in the one category as in
the other.

Under the suit by the trustee in the United States court, all
the property of the Brierfield Coal & Iron Company was
placed in the hands of a trustee or receiver, to be administered
for the purposes specified in the mortgage and further assur-
ance.   Until that court finishes the litigation there pending,
and relinquishes its possession of the property, no other court
can disturb that possession, or interfere with the untrammelled
adjudication of the issues raised in that suit.   And the de-
cision or decree rendered, or to be rendered in that suit, will
bind all the parties to it, and their privies, unless it is reversed
by a court having authority to revise its judgment.—*Stout v.
Lye,* 103 U. S. 66.   In other words, while the proceedings in
that court are *in fieri,* and the corporation's effects are in the
hands of that court's trustee or receiver, no other court of
concurrent jurisdiction, and no suitor in such court, can dis-
turb or interfere with such possession, or with that court's un-
trammelled adjudication of the questions before it.   The rule
has no greater extent than this.—2 Lead. Cases in Eq., part
II, 1402.

As has been shown, the bill in the Circuit Court of the
United States was filed and is prosecuted by the trustee ap-
pointed in the mortgage and deed of further assurance executed

[Gay, Hardie & Co. v. Brierfield Coal & Iron Co.]

by the Brierfield Coal & Iron Company. Its ultimate object was and is to foreclose those conveyances, and with the proceeds to pay the *quasi*-receiver's certificates, and the five hundred thousand dollars of bonds hereinbefore described. Only the corporation, the holders of those bonds, and certain creditors with whom some of those bonds have been deposited as security for money borrowed, are made parties to that bill. Gay, Hardie & Co. are neither made parties, nor is their claim mentioned in the bill. Not being defendants to that suit, they can not be heard in defense of it; and the law furnishes them no coercive means of having themselves made defendants. The law arms the complainant with the supreme discretion and option of determining whom he will make parties defendant to his bill; and the only risk he incurs is, that if he omit a necessary party, he is liable to suffer in the decree he obtains. There is no process known to the law, by which a stranger to the record can procure himself to be made a defendant.—*Renfro v. Goetter*, 78 Ala. 311; *Flournoy v. Harper*, 81 Ala. 494; *Ex parte Printup*, 87 Ala. 148.

True, in the prayer of the bill is found this clause: "If any of the creditors of said Brierfield Coal & Iron Company, who are not made parties defendant to this bill, or any persons holding and asserting claims against the trust estate in the hands of orator, desire to have their rights determined in this honorable court, that they be permitted [to make] themselves parties defendant in this cause, on filing their petition therein, setting forth their said debts, demands and claims, and that said matters shall be heard and determined in this cause." Under the authorities cited above, the practice here invited would have been patently irregular, and we know of no precedent for it. Moreover, it does not appear that Gay, Hardie & Co. had notice of said offer, or even of the filing of that bill, in time to avail themselves of it for any practical purpose in that suit. We will not comment further on that clause at this time.

Should it occur in the further progress of said suit in the Circuit Court of the United States, that the creditors of the Brierfield Coal & Iron Company are notified to come in, and propound and prove their claims, that would be no adequate remedy to Gay, Hardie & Co., if the averments of their bill be true. Under such notice, they would come in as claimants under that suit, and not as defendants, armed with the power to controvert the legality of the bonds and mortgage. They could claim only in subordination, not in antagonism to the purposes of that suit. Thus handicapped, their claim would be subordinated to the certificates of indebtedness which have

been issued, and to the five hundred thousand dollars of bonds, already decreed by that court to have a paramount lien on all the property embraced in the mortgage and further assurance.

Gay, Hardie & Co. are simple-contract creditors, without a judgment, and without a lien. Their bill may be in part rested on section 3544 of the Code of 1886, which is in the following language: "A creditor without a lien may file a bill in chancery to discover, or to subject to the payment of his debt, any property which has been fraudulently transferred or conveyed, or attempted to be fraudulently transferred or conveyed by his debtor." See the many rulings on that statute cited in the note.— *Gibson v. Trowbridge Furniture Co.*, 93 Ala. 579; 9 So. Rep. 320. We say the bill rests in part on that statute, because its averments tend to make a case therein provided for, as we will hereafter show. See, also, *M. & F. Railway Co. v. McKenzie*, 85 Ala. 546; *Lawson v. Warren*, 89 Ala. 584; *Martin v. Carter*, 90 Ala. 96.

The charges of fraud and fraudulent purposes, as set forth in the present bill, may be briefly summarized as follows: *First*, the bonds for five hundred thousand dollars, and the mortgage given to secure their payment, were given upon no consideration, and in violation of Art. XIV, § 6 of the Constitution of Alabama.—*Fitzpatrick v. Dispatch Pub. Co.*, 83 Ala. 604; *Williams v. Evans*, 87 Ala. 725. *Second*, a large amount of the stock subscription to the corporation remains unpaid, and it is not shown that the corporation has made, or is making any attempt to collect it; and no excuse is offered for the failure. The said bill in the Circuit Court of the United States, as represented in the present bill, admits this sum to be large. The bill in this case charges it is five hundred thousand dollars. *Third*, the said trustee's bill, if correctly set forth, while it admits this large unpaid balance of stock subscription, seeks to sell the entire effects of the; corporation for the payment of illegal and worthless bonds and this, in a bill which has for its parties only those persons who are interested in their payment and collection. If the averments of the present bill be true—and on this hearing we must treat them as true—there is not only no adversary interest presented in the suit by the trustee, but in the nature of things none could be regularly presented. A judgment thus obtained is collusive, and can have no binding effect on creditors who are not, and have no legitimate means of making themselves parties. Only parties and their privies in estate or blood are estopped from disputing the ascertained facts on which judgments of courts are founded. As to creditors who

are strangers to the record, if fraudulent, they are of no avail.
When they are made a fraudulent contrivance, or aid in hindering, delaying or obstructing creditors in the enforcement of
their just demands, they acquire no additional force by the
circumstance that, in form, they are the solemn judgments of
a court.    Nothing is simpler or easier of accomplishment than
to reduce an unfounded or fraudulent claim to judgment, when
the ostensible antagonists concur in the desire to do so; and
the court, or presiding judge, being ignorant of the secret intent, and acting only on the case shown in the pleadings, is
without knowledge of the purpose intended.    He is thus
sometimes made the innocent instrument of a most atrocious
fraud.    Chancery sweeps away such contrivances as chaff before the wind.—1 Black on Judgments, § 593, *et seq.; Michaels
v. Post*, 21 Wall. 398; *Eslava v. Eslava*, 50 Ala. 32; *Lee v.
Lee*, 55 Ala. 590; *Dunklin v. Wilson*, 64 Ala. 162; *Dunklin
v. Harvey*, 56 Ala. 177; *Humphreys v. Burleson*, 72 Ala. 1;
*Met. Bank v. Durant*, 22 N. J. Eq. 35; s. c , 24 N. J. Eq. 556;
3 Pom. Eq., §§ 919, 970; 1 Story's Equity, § 252a *et seq.;
Johnson v. Waters*, 111 U. S. 640, 674; *Sawyer v. Hoag*,
17 Wall. 610, 620.

As we have said, we are dealing with the case made by the
averments of the bill.    According to these averments, the
bonds were issued without any consideration, and in direct
violation of the Constitution of this State.    It is not shown,
nor can it be presumed, that the corporate effects sold under
the Circuit Court's decree will bring a sum in excess of the
amount of the *quasi*-receiver's certificates and the bonded indebtedness.    If they do not, the other creditors have nothing
to look to for payment of their demands, unless they can successfully controvert the legality of the bonded indebtedness.
No answers have been filed to the present bill, and we can
not know what the defense may be.    It would be worse than
idle for us to speculate about it, and we will not attempt it.
Let us charitably hope the grave charges made may prove unfounded.    At this stage of the litigation we will not comment
on the frauds that may be and sometimes are perpetrated
through the seeming forms of law.

We have said that the Chancery Court must not, and can
not interfere with the possession acquired by the Circuit Court
of the United States, until that court finishes its work and relinquishes its possession.    What steps can be taken in the
Chancery Court while the conditions remain as they are
shown in the transcript before us?    It is certainly true that
no court will or can restrain or intermeddle with another
court of co-ordinate jurisdiction.    It does, however, often in

[Gay, Hardie & Co. v. Brierfield Coal & Iron Co.]

terfere with parties who are conducting litigation before another tribunal.

It would seem there can be no objection to taking testimony to establish the justness of complainants' claim, and, if true as charged, the fraud of the corporation through its officers in placing or attempting to place its effects beyond the reach of its *bona fide* creditors. Nor does it appear that steps can not be taken to subject the unpaid subscriptions of stock in the corporation, if there be such, to the payment of the demand of complainants. It is not shown that the Circuit Court of the United States has taken any jurisdiction of this subject, or has been asked to do so. In the averments and prayer of the bill, if correctly stated, it rather appears to have been given the go-by.— *Glenn v. Semple*, 80 Ala. 159, and authorities cited.

What recourse complainants can assert against the property of the corporation itself, or against its proceeds, after it shall have passed out of the possession of the Circuit Court of the United States, would seem to depend on the inquiry, whether it passes to the bondholders, or to strangers as purchasers. Possibly in the one case, if the averments of the present bill be true, the property itself may continue subject, while in the other, only the proceeds could be reached. We make these suggestions without intending to commit ourselves absolutely to their correctness.

I concur in the reversal of the chancellor's decree.

[On Application for Rehearing.]

Pettus & Pettus, for the appellees.—(1.) "It is a doctrine of law too long established to require the citation of authorities, that where a court has jurisdiction, it has a right to decide every question which occurs in the cause, and whether its decision be correct or otherwise, its judgment, till reversed, is regarded as binding on every other court; and that where the jurisdiction of a court, and the right of a plaintiff to prosecute his suit in it, have once attached, that right can not be arrested or taken away by proceedings in any other court. These rules have their foundation, not merely in comity, but in necessity. For, if one may enjoin, the other may retort by injunction; and thus the parties be without remedy, being liable for a process for contempt in one, if they dare to proceed in the other. Neither can one take property from the custody of the other by replevin, or any other process, for this would produce a conflict extremely embarrassing to the administration of justice."—*Peck v. Jenness*, 7 How. 624. To the same

[Gay, Hardie & Co. v. Brierfield Coal & Iron Co.]

effect, but on different phases of the doctrine, are the following cases : *Peale v. Phipps*, 14 How. 368; *Williams v. Benedict'* 8 How. 107; *Wiswall v. Sampson*, 14 How. 52; *Stout v. Lye*, 103 U. S. 66; *Randall v. Howard*, 2 Black, 585; *Amy v. Supervisors*, 11 Wall. 136. The attention of the court is again invited to these cases, and a reconsideration of the opinions delivered is asked, in order that this court may put itself in alignment with the Supreme Court of the United States, which is the final arbiter of every case involving a Federal question, as this case does.

(2.) The complainants are not without remedy, although they could not have made themselves parties defendant to the suit in the Federal court. They might have filed their bill in the Federal court, which has possession of the property, and is administering the trust estate; and their suit being regarded as ancillary, the question of citizenship would be immaterial. *Minnesota Co. v. St. Paul Co.*, 2 Wall. 633; *Johnson v. Christian*, 125 U. S. 642; *Krippendorf v. Hyde*, 110 U. S. 276; *Freeman v. Howe*, 24 How. 450; *Morgan Co. v. Texas Central Railroad Co.*, 137 U. S. 201.

(3.) The bill was not filed in the proper county. The residence of the corporation is shown to be in Bibb county, and its real estate is located in Bibb and Shelby counties. Chambers resides in Colbert county, but he had no interest in any of the property, and was not a stockholder or bondholder; nor is any fraud or misconduct in reference to the matter in litigation charged against him. He was not a material or necessary party.—Code, § 3421.

(4.) Chambers was in possession of the property under the appointment and order of the court, and he could not be sued, in reference to the property, without the permission of the court.—*Davis v. Gray*, 16 Wall. 203; *Barton v. Barbour*, 104 U. S. 126; *Ames v. Trustees*, 20 Beav. 332; 9 Vesey, 335; 7 Paige, 515. The act of Congress of March 3d, 1847, does not authorize the suit.—U. S. Statutes, 1887-8, p. 436.

ALEX. T. LONDON, *contra*.—(1.) The validity of Chambers appointment as trustee can not be questioned.—*Griffin v. Doe*, 12 Ala. 783; *Foster v. Goree*, 4 Ala. 440; *Girard v. Philadelphia*, 7 Wall. 1; *Irvine v. Dunham*, 111 U. S. 327; 1 Perry on Trusts, § 275; *Dumas v. Robbins*, 48 Ala. 545. (2.) By the substitution of Chambers as trustee, the legal title to the property became vested in him, and he was an indispensable party to the bill.—*Thayer v. Life Asso.*, 112 U. S. 717; *McCully v. Chapman*, 58 Ala. 325; *Powe v. McLeod*, 76 Ala. 418; *Harris v. Moore*, 72 Ala. 507.

[Gay, Hardie & Co. v. Brierfield Coal & Iron Co.]

STONE, C. J.—It is contended before us that the bill in this case ought to have been dismissed, because of an error in the local jurisdiction; that is, that the bill was filed in Colbert county, the residence of Chambers, the trustee, but of no other party to the suit. The contention is, that Chambers was a naked trustee, having no interest in anything involved in the litigation, and that his residence did not and could not constitute him a material defendant, so as to authorize the suit to be brought in that county.—Code of 1886, § 3421.

This case was not heard in Colbert, but in Jefferson county. It was removed to the latter county by an order entered on the minutes of the Colbert court, as follows:

"Gay, Hardie & Co. *v.* Brierfield Coal & Iron Co. W. L. Chambers as Trustee. } By the consent of counsel for the respective parties in the above entitled cause, the same is removed for trial from the Chancery Court of Colbert county to the Chancery Court of Jefferson county, and the register of Colbert county is hereby directed to transfer to the Chancery Court of Jefferson county all the original process and papers in said cause, and a bill of his cost to this date. The register of Colbert county will file in his office the consent of counsel and this decree." Signed by Chancellor Cobbs, and dated December 18th, 1889.

In addition to the foregoing, the following orders were made and filed in the Chancery Court of Jefferson county, after the cause was removed to that county; and this, without any reference being made to the irregularity of filing the bill in Colbert county, if that be an irregularity.

"Gay, Hardie & Co. *v.* Brierfield Coal & Iron Company et. al. } In chancery. Fall term, 1889–1890. It is ordered by the court that this cause be, and the same is hereby, submitted on demurrer to the bill, to be heard on briefs."

"Gay, Hardie & Co. *v.* The Brierfield Coal & Iron Company. } In chancery. This cause coming on to be heard, was submitted upon the demurrers to the bill, and was argued by counsel; and being duly considered, it is ordered, adjudged and decreed, that the demurrers are well taken, and are sustained." Signed by Chancellor Cobbs, and marked "Filed and enrolled this June 26, 1890," by the register.

We consider it unnecessary to decide whether or not the suit was properly brought in Colbert county. If not, then the conduct of the parties was a waiver of the irregularity. *Hair v. Moody*, 9 Ala. 399; *Byrd v. McDaniel*, 26 Ala. 582.

[Gay, Hardie & Co. v. Brierfield Coal & Iron Co.]

We should do injustice to the research of counsel, if we did not pronounce the application for a rehearing in this case to be able, and fully up to the merits of the question it discusses. It certainly demonstrates that, so long as the Circuit Court of the United States has control and possession of the property and effects of the Brierfield Coal & Iron Company, no other court can interfere with that possession, or hinder it in any way in the free consideration and adjudication of the questions before it; and the judgment or decree it may render will, unless reversed on appeal, be determinative of the rights involved, as between the parties to that suit. Does it, or can it, extend any farther? When that court pronounces judgment, and relinquishes possession, it can not be affirmed that any right or claim has become *res judicata*, unless both the claim and claimant have been before the court. Such is the mandate of all enlightened jurisprudence.—2 Black Judgments, §§ 500, 504; 1 Greenl. Ev. §§ 534–5.

No particular charm can attach to the fact that the suit of Preston B. Plumb, referred to in the present bill of Gay, Hardie & Co, was pending in a court deriving its powers from the government of the United States. The same doctrine of non-interference will apply, and only the same, as if that suit had been pending in a State court, with a limited exception not material to this case. The present suit does not propose to obstruct or hinder the United States Court in the free control of the property it has in its possession, or in the untrammelled administration of justice between the parties it has before it. It claims, however, and rightfully claims, that the judgment of that, or of any other court, rendered on issue joined between the parties to that suit, does not, and can not, determine property rights against other claimants who were not parties to that litigation. It founds its claim on the fundamental principle, that judgments bind, and only bind, parties to the suit, and their privies. It claims that if, in a contention between A and B, the right be adjudged in A, this does not estop C from asserting and proving that the paramount title is in him.

Another argument in support of the main ground on which the equity of the bill in this case is rested. As we have shown in a former opinion, taking the averments of the bill for our guide, when the projectors of the Brierfield Coal & Iron Company placed its stock on the market with a view to organization, it was done with the agreement that every subscriber who would purchase and pay for the stock of the corporation, should, without further payment or consideration, receive a thousand dollar bond of the company for every nine hundred

dollars of stock subscribed and paid for; and the payment of these bonds was to be secured by a mortgage on the entire property and effects of the corporation. This agreement was made good, and the subscribers for the stock received not only the certificates of stock they subscribed and paid for, but in addition the said bonds of the company, in excess of the money paid, secured by a first mortgage on the entire property of the corporation. Ten dollars of this first and highest secured debt and obligation of the company for every nine dollars subscribed and paid in.

We have recently had occasion to consider the nature and purpose of capital stock in business corporations, and the legislative policy which requires such stock as a condition on which it grants a corporate franchise. The liabilities of corporations, unlike the debts of natural persons, impose no personal debts on any one. Only the corporation's effects can be reached for the satisfaction of debts. Hence the purpose and policy of requiring a capital stock to be subscribed and paid in. It is intended as a security and pledge for the payment of any liabilities the corporation may incur, and partakes largely of the nature of any other pawn or pledge required and given as security for the fulfillment of a promise. It is a pledge in trust, primarily for the security of creditors, and can not rightfully be withdrawn until all debts and liabilities of the corporation are paid.—*Gibson v. Trowbridge Furniture Co.*, 93 Ala. 579.

In the organization of the Brierfield Coal & Iron Company, as the pleadings show, this policy was entirely disregarded. True, the capital stock was to be subscribed and paid for, but the money was not to be left in safe pledge for the security of persons that might become its creditors. Stripped of circuity, the money received for stock subscriptions was only borrowed from the stock subscribers, to be repaid to them, not contingently, but in any event that might occur. Repaid, not as an ordinary debt of the corporation, but as a preferred and secured debt. Preferred and secured by bonds and a first mortgage on all the property of the corporation. So, if the averments of the bill be true, the Brierfield Coal & Iron Company, instead of having a capital stock subscribed and paid, or to be paid on call, commenced operations upon no capital stock of its own, either in possession or in prospect, but on borrowed money, secured to be repaid with a premium by a first mortgage on all its effects, present and prospective, with nothing in pledge for other debts it might incur, and without other security for the payment of such debts, except a possible surplus of assets, left after repaying the borrowed capital

[Gafford v. Lofton.]

stock. In this way it went through the form of organizing and exercising its corporate powers. Instead of requiring a capital stock to be paid in and administered as a security for creditors, it practically dispensed with it altogether. Instead of holding the capital stock as a trust fund primarily for the benefit of creditors, and secondarily for the stockholders, it reversed this natural order of things, transformed the stockholders into creditors, and made them a preferred class, with a prior, paramount mortgage lien over all other creditors who may have trusted, or may trust the corporation. So then, we have the case of an incipient corporation issuing five hundred thousand dollars of its bonds upon no consideration, and secured by a first mortgage, as shown in our first opinion, or, as we have attempted to set forth above, a simple act of borrowing from so called stockholders the entire capital stock on which it proposed to do business, secured to be repaid in preference to all other liabilities by a first mortgage on all the property of the corporation. If the bill of Gay, Hardie & Co. truly represents the facts, can further comment be necessary?

The application for a rehearing must be denied.