# George et al. v. Central Railroad & Banking Co. et al.

*Bill in Equity by Stockholders of a Railroad Corporation to cancel a Lease by said Corporation, and to Enjoin another Railroad Corporation from voting at Election of Officers.*

1. *Lease of one railroad company by another.*—Under the general law, in the absence of special statutory authority, one railroad corporation has no power to lease its road or other property to another railroad corporation.

2. *Same; when contrary to statutory provisions; equity of bill for cancellation.*—Under the statutory provisions of this State (Code, § 1586), a railroad corporation can lease its road and property to another railroad company that is continuous or connected with it by the performance by each of the companies of the requirements of said section; but a lease executed by two such railroad companies is invalid, which, while reciting that it was executed by the directors of each company, does not recite that the stockholders' meeting of one of the companies was called by its directors at a time and place, and in the manner designated by them, and in reference to the other company its recitals fail to show that the lease was assented to by a majority in value of the stockholders, represented in person or by proxy at a meeting called by the directors, at such time and place, and in such manner as they might designate; and a bill filed by the stockholders of one of the railroad corporations, seeking the cancellation

of said lease, which is made an exhibit to their bill, is not demurrable on the ground that said lease was valid and not contrary to law.

3. *Demurrer to an entire bill.*—A demurrer to a bill in equity as a whole can not be sustained, if, for any equity apparent in the bill, the complainants are entitled to relief.

4. *Injunction against a railroad corporation voting stock in another railroad corporation.*—Where one railroad corporation has purchased a majority of the stock of another railroad corporation, with the intent and purpose of getting the management and control thereof, in order to defeat or lessen competition in the businesses of the two companies, or to encourage monopoly, and the corporation owning the majority of the other's stock violates duties in respect of the property and rights of the other company and its stockholders, committing willful wastes and subjecting said company to a multiplicity of suits, a court of equity will interfere, by an injunction at the suit of a minority of the stockholders, to restrain the said corporation owning the majority of the stock from the use of said stock in the management of the affairs of the other corporation and in the election of its officers.

5. *Same; jurisdiction of court of equity notwithstanding property in the hands of a receiver.*—In a bill filed to enjoin a railroad corporation owning a majority of the stock in another railroad corporation from voting its stock in the management of the affairs of the latter company, and in the election of its officers, the jurisdiction of the court is not ousted, and the right to grant the relief prayed for is not effected, by the fact that the road whose stock is controlled by the other corporation is in the hands of a receiver, appointed by other courts.

6. *Same; laches.*—Where a bill is filed by stockholders in a corporation to enjoin another corporation owning a majority of the stock of the former corporation from voting its stock in the control of the affairs and in the election of the officers of the said corporation, the fact that the complainant stockholders, after full knowledge of the grounds of complaint alleged in their bill, or full opportunity to acquire such knowledge, acquiesced in the acts complained of for more than six years, does not debar them from having enjoined such use of the stock in the future.

7. *Injunction against a corporation at suit of stockholders; previous request to directors for action.*—A minority of the stockholders of a corporation can not maintain a bill in equity to prevent illegal action on the part of the majority, without a previous request to the proper officers to interfere, and their failure or refusal to do so; but when it is shown that a majority of the stock of said corporation is owned by another corporation, which practically creates and controls the managing and governing bodies of said corporation, the necessity for such a demand upon the governing body is dispensed with, as any such demand would be fruitless.

[George et al. v. Central Railroad & Banking Co. et al.]

APPEAL from the Chancery Court of Bullock.

Heard before the Hon. JERE N. WILLIAMS.

The bill in this case was filed on October 25, 1893, by the appellants against the appellees. The allegations of the bill, the relief prayed for, and the grounds of demurrer are sufficiently stated in the opinion. The appeal is prosecuted by the complainants, who assign as error the decree of the chancellor sustaining the demurrers interposed.

GEORGE F. MOORE, for appellants.—1. The holding and use by the Central company of the majority of the capital stock of the Girard company for the purpose of controlling and managing it under the circumstances shown in the bill, was and is a continuous wrong and threat of injury to the minority stockholders, and gives the bill equity without reference to the lease.—*M. & C. R. R Co. v. Woods*, 88 Ala. 630, 7 So. Rep. 108; *Central R. R. Co. v. Collins*, 40 Ga. 582; *Am. Refrigerating Co. v. Linn*, 93 Ala. 612–13, 7 So. Rep. 191.

2. The court erred in holding that the State chancery court had no jurisdiction of the case. The statement that "the property is in the hands of a receiver," which is incorporated in this demurrer, is not found anywhere in the bill. On the contrary, it is stated in the bill that the courts of the United States had never taken jurisdiction over the Girard road. "A demurrer to a bill in equity must be based on matter apparent on the face of the bill, and can not be supported by any new fact or foreign matter alleged by the defendant."—*Bromberg v. Heyer*, 69 Ala. 22; *Ramage v. Towles*, 85 Ala. 588, 5 So. Rep. 342; *Knox v. Childersburg Land Co.*, 86 Ala. 182, 5 So. Rep. 578; *Manning v. Pippen*, 86 Ala. 362, 5 So. Rep. 572. But if the bill had shown that the property of the Girard company was in the hands of a receiver, this fact would not have ousted the jurisdiction of the court in this case. The State court would have denied the prayer of the bill for the appointment of a receiver, and ordered that the possession of the receiver should not be disturbed, but this in no way interfered with the jurisdiction of the court to enjoin the illegal use of stock, to take an account and have the lease cancelled.—*Gay, Hardie & Co. v. Brierfield Co.*, 94 Ala. 303, 11 So. Rep. 353; *Wyatt v. O. & M. R. Co.*, 10 Brad. (Ill.) 291; *O. &*

*M. R. Co. v. Russell*, 23 Amer. & Eng. R. R. Cases, 149; Gluck & Becker on Receivers, § 7, page 23.

3. The reasons shown by the allegations of the bill why complainant did not demand the board of directors of the Girard company to institute the present suit constituted a sufficient excuse for not making such demand. *Mack v. DeBardelaben Co.*, 90 Ala. 400, 8 So. Rep. 150; *Rothwell v. Robinson*, 39 Minn. 1. The Central company, by reason of its ownership of the majority stock in the Girard company, could control both sides of any litigation instituted against it, unless the use of its said stock is restrained. Under such circumstances, a demand on directors elected by that company would be not only useless, but absurd.—*Knoop v. Bohmrich*, 36 Amer. & Eng. Corp. Cases, 315; *Bickerhoff v. Bostwick*, 88 N. Y. 59; *Menier v. Hooper*, 9 Ch. Ap. Cases 350; 2 Pomeroy's Eq. Jur., § 1095, pp. 162-7-8.

4. The court erred in holding that complainant had been guilty of *laches* in instituting the present suit.— *Board v. Lafayette R. R. Co.*, 50 Ind. 112-113; *Campbell's Appeal*, 80 Pa. St. 301; Cook on Stocks and Stockholders and Corporation Law, §§ 729, 731, 732.

5. The court erred in decreeing that the lease of 1886 was a valid and subsisting contract. The said lease shows on its face that it was not executed in accordance with the provisions of the statute.—Code, § 1586; *M. & C. R. R. Co. v. Grayson*, 88 Ala. 576, 7 So. Rep. 122; *Penna. Co. v. St. L., A. & C. R. R. Co.*, 118 U. S. 317. The Central company was prohibited by the fundamental law of the State which created it from accepting that lease, or from buying or using the majority of the stock in the Girard company for the purpose of encouraging monopoly or lessening competition.—*Rowena Clarke v. Central Co.*, 50 Fed. Rep. 338; *Langdon v. Branch*, 37 Fed. Rep. 449; *Central R. R. Co. v. Collins*, 40 Ga. 582; *M. & C. R. R. Co. v. Woods*, 88 Ala. 630, 7 So. Rep. 108; 101 U. S. 71; 67 N. H. 537.

6. The appointment of a receiver does not prevent a stockholder from bringing an action against the corporation of which he is a member and another. See authorities cited *supra*; also 7 Daly, 273; 10 Bradwell (Ill.) 291, 14 Wall. 383. The bill shows that the Girard company was never made a party to the proceedings in the United States courts, and any order appointing a

receiver over its property in a suit to which it was not a party is a nullity.—High on Receivers, § 84; *Graven-stine's Appeal*, 49 Pa. St. 310; *Baker v. Backus*, 32 Ill. 96; Beach on Receivers, § 413.

P. B. McKENZIE, for appellant, also filed a written argument discussing the several grounds of demurrer.

LAWTON & CUNNINGHAM, for Central Railroad & Banking Co.—The gravamen of the bill in this case is the illegality of the lease of the Mobile & Girard Railroad Company by its board of directors to the Central Railroad & Banking Company of Georgia. The Central Railroad & Banking Co. of Georgia was chartered by the legislature of Georgia, December 14, 1835 (Acts 1835, p. 217), and under the act of the legislature of Georgia of 1852, approved January 22, (Acts 1852, p. 119), the Central railroad was authorized to lease any railroad that then or thereafter should connect with it. The Central railroad having this power to lease the connecting railroads under the act of 1852, there is nothing in the constitution of Georgia that can destroy or abridge it, and the said lease is not contrary to the public policy of the State of Georgia.—Code of Georgia, § 1689; *Smith v. DuBose*, 78 Ga. 435; *Central R. R. v. Mayor &c. Macon*, 43 Ga. 615.

Even if the lease was illegal, it can not avail complainants, for they have acquiesced therein for six years, with full knowledge of the fact, and are estopped.—*Cozart v. Ga. R. R. Co.*, 54 Ga. 383; *Alexander v. Searcy*, 8 S. E. Rep. 630; *Phosphate Co. v. Green*, L. R. 7 Com. Pl. 43; *Kelley v. Newburyport &c. R. R.*, 24 Amer. & Eng. R. R. Cases, 27; *Taylor v. S. & N. Ala. R. R. Co.*, 13 Fed. Rep. 152; *Sheldon Hat &c. Co. v. Eickemeyer &c. Co.*, 90 N. Y. 607; 2 Herman on Estoppel, § 1136, p. 1323; Cook on Stockholders, § 731; Beach on Priv. Corp., § 431; 2 Morawetz on Corp., §§ 631, 632, 633.

Stockholders who wish to sue for the corporation must show some reason why the corporation will not sue for itself. A mere allegation that the majority of the stock is held by another will not suffice to excuse the application to the directors.—*Tuscaloosa &c. Co. v. Cox*, 68 Ala. 71; *Nathan v. Tompkins*, 82 Ala. 437, 2 So. Rep. 747; *M. & C. R. R. Co. v. Woods*, 88 Ala. 630, 7 So. Rep. 108; *Tutwiler v. Tuscaloosa &c. Co.*, 89 Ala. 391, 7 So. Rep. 398;

*Mack v. DeBardelaben &c. Co.*, 90 Ala. 400, 8 So. Rep. 150; *Hawes v. Oakland*, 104 U. S. 460; *Huntington v. Palmer*, 104 U. S. 482; *Quincey v. Steele*, 120 U. S. 241; *Dannmeyer v. Coleman*, 11 Fed. Rep. 97 (10); *Detroit v. Dean*, 106 U. S. 537-542.

PEABODY, BRANNON, HATCHER & MARTIN, for Mobile & Girard Railroad Co.—The ulterior object of complainants is to avoid and set aside the lease made by the Mobile & Girard Railroad Company to the Central Railroad & Banking Company of Georgia of all their property and franchises. The immediate object is to have a receiver appointed by the chancery court of Bullock county to take possession of the Mobile & Girard railroad, and operate the same pending the litigation. It appears from the allegations in the bill that at and before the filing of the same the Central Railroad of Georgia was in the hands of H. M. Comer, as receiver, appointed by the chancery courts both of Georgia and Alabama, and that he also was in possession of the property of the Mobile & Girard railroad as a part of the property of the Central railroad under this lease. Hence the chancery court of Bullock county could not disturb the possession of the receiver appointed by the U. S. court.—Beach on Receivers, par. 226, 213 ; 102 U. S. Rep. 256, 2 Wallace, 609 ; 24 Howard 450; 21 Howard, 506; 3 Wallace, 334, 2 Woods, 618. It is true that complainant denies the regularity of this appointment, but the right of the receiver to hold possession can not be collaterally attacked.— *Comer v. Bray*, 83 Ala. 217, 3 So. Rep. 554. Nor can it be attacked or his possession disturbed when he is not made a party to the proceedings.—8 Paige (New York Ch.) 566 ; 2 Woods, 626.

While no leasehold estate can be created in Alabama for a longer term than twenty years, yet a lease for 99 years is good for twenty years, and as this lease was made in 1887 it still has several years to run.—Code, § 1855 ; *Pope v. Pickett*, 65 Ala. 487 ; *Robertson v. Hayes*, 83 Ala. 290, 3 So. Rep. 674 ; *Trammell v. Chambers Co.*, 93 Ala. 388, 9 So. Rep. 815.

HEAD, J.—This bill is exhibited by C. S. Lee and Fannie M. George, citizens of Alabama, and stockholders in the Mobile & Girard Railroad Company, against

that company, an Alabama corporation, and the Central Railroad and Banking Company of Georgia, a Georgia corporation. It is filed in behalf of the complainants and all other stockholders of the Mobile & Girard company (except the said Central Railroad & Banking Company of Georgia) who may come in and make themselves parties and contribute to the expenses of the suit. The purpose of the bill is to enjoin the Central company from voting certain stock held and claimed by it in the Mobile & Girard company; to vacate, as void, a certain lease of its road and other property and franchises by the Mobile & Girard company to the Central company, and for an accounting from the latter company for its use and abuse of the property and rights of the former, while in possession of the same. A receiver of the property of the Mobile & Girard company is also applied for. The allegations show that, prior to the 13th day of September, 1882, the Central company had acquired 4,538 shares of the capital stock of the Mobile & Girard company, of the face value of $438,000, and on that date controlled about 2,799 shares of preferred stock in said Girard company, on which it, the Central, held a mortgage, and which it voted in meetings, and at elections of officers, of the Girard company. At that date, the whole amount of capital stock of the Girard company outstanding was of the face value of $1,268,372.74, or about 12,683 shares; that on June 1, 1891, the Central owned 8,161 ½ shares of said stock, and that the whole number of shares then outstanding was 12,679 70-100, and that the Central company, by reason of its ownership and control of the majority of the stock, has directed and controlled the election of the directors and officers of the Girard company ever since the year 1882, and up to and including the last election. It is then alleged that the Central company is a corporation under the laws of Georgia, deriving all its rights, powers and franchises from the authority of that State, and subject to the limitations imposed upon it by her constitution and laws; and it is alleged that the constitution of Georgia provides that, "The General Assembly of this State shall have no power to authorize any corporation to buy shares of stock in any other corporation in this State or elsewhere, or to make any contract or agreement whatever with any such corporation which may have the effect or be intended to

have the effect to defeat or lessen competition in their respective businesses, or to encourage monopoly; and that all such contracts or agreements shall be illegal and void;'' that the Central company acquired all its said stock, except about 77 shares, after the year 1873, and the larger portion of it after the adoption of the constitution of Georgia containing the provision above copied, which was December 5th, 1877; and the pleader insists that the said company was without power, under the laws of Georgia to buy said stock; and it is further insisted in the bill that it is contrary to the public policy of the State of Alabama to permit a foreign corporation thus to acquire control over a corporation created under her laws, and owing her duties under its charter contract. It is further alleged that the purpose of the Central company in acquiring the stock was to get control of the affairs and management of the Girard company, and thereby to defeat and lessen competition in the businesses of said two roads, respectively, and also to encourage the monopoly which the Central company was and has been continuously seeking to enlarge and foster as to the transportation of all freights and other business going eastward out of the State of Alabama, and over the lines of the Girard road and the Columbus branch of the Western Railroad of Alabama. It is also shown that the Central had acquired sundry other specified railroads, or control of the same, in Alabama, with the purpose to defeat or lessen competition in its business as a common carrier of freights and passengers, such being especially its purpose in its acquisition of control of the Girard company.

On September 10, 1886, the bill alleges, the Girard company, attempted to make, execute and deliver to the Central company a lease of its road and other property and franchises, a copy of which is exhibited with the bill. This lease was for a term of ninety-nine years, and embraced the railroad, and all extensions thereof, which might thereafter be constructed; and all property, assets and franchises of every description of the Girard company, with the right to the possession and enjoyment of the same. In consideration of the lease, the instrument contains many covenants on the part of the lessee company not necessary to be mentioned here. The bill charges that the Girard company had no power to make

this lease, and the Central company no power to accept it; and that the same is void as against public policy. Its validity is assailed also on the ground, that when it was authorized and executed, the Central company controlled a majority of the Girard stock, by reason whereof it became and was, in effect, both lessor and lessee. It is also assailed, as void, under the influence of the statute of Alabama which prohibits the making of a lease for a longer term than twenty years.—Code of Alabama (1886), § 1836.

The Central company went into possession of the leased property under the lease and used and operated it until June, 1891. It appears that the Central company became insolvent and its property and rights passed into other hands. On June 15, 1891, it, the Central company, executed a lease of all its property, for a term of ninety-nine years, to the Georgia Pacific Railroad Company, but it seems that that company never went into possession, having on June 19, 1888, executed a lease of its own road to the Richmond & Danville Railroad Company; and the bill avers that the Central company delivered possession of the Girard road, its property and assets, to the Richmond & Danville company, who operated it until it abandoned possession thereof, at a time, to-wit, sometime after March 3, 1892, when it repudiated the lease of June 15, 1891, of the Central company to the Georgia Pacific company. The bill, nevertheless, states in another place, in the 18th paragraph thereof, that the "Central company has operated said road, from Columbus to its terminus, ever since it went into possession under the lease of 1886 by the Girard company to it." There were sundry suits, in equity, instituted in the federal court of Georgia and state court of Alabama, involving the Central company and its property, viz., a suit filed by Rowena Clarke on March 4, 1892, in the federal court, at Savannah, against the Central company, the Richmond & Danville company and others, ancillary to which was a bill filed in the state court at Montgomery, Alabama, on April 11th, 1892; a suit filed by the Central company itself against other companies on the 4th of July, 1892, in the federal court, and on April 11th, 1892, it also filed a bill in the state court in Montgomery, Alabama. We deem it unnecessary to set out the nature and purpose of these several suits, except to say

that in them sundry persons were appointed receivers of the property and assets of the Central company, who went into, and are now in possession thereof, as such receivers; some of the receivers being appointed at the instance of the Central company itself. The present bill, however, expressly avers that the Girard company was not made a party to any of said suits, and that none of its property ever went into the hands of any of said receivers.

In the lease of 1886, by the Girard to the Central company, assailed as void in this suit, it is stipulated that said railroad might be extended at any time by the Central company, the consent of the Girard company being first obtained; and in the event of an extension beyond its then terminus, at Troy, Alabama, or any further extension thereof, the Girard company, would, at any time, upon the request of the Central company, its successors or assigns, issue such bonds as might be necessary to build such extension or extensions, not exceeding the ratio that the then bonded debt of the company bore to the number of miles of said railroad, and would secure the payment of such new bonds by a mortgage on the whole of its railroad; and the bill alleges that, in March, 1890, the Girard company entered into a written contract with the Central company, by which the latter agreed to build an extension from Troy southwestward to Andalusia, Alabama, a distance of towit, fifty miles; and the Girard agreed to issue and deliver to the Central its first mortgage bonds, at the rate of not exceeding $12,781 per mile, when and as soon as the extension was completed and in operation; that the Girard also paid to the Central company $142,500, which was the purchase money of the lands granted by Congress to aid in building said railroad, on account of the building and equipment of said road; that under said contract, the Central company constructed and equipped thirty-seven miles of said extension, and graded, and procured the necessary cross-ties to complete the remainder; that, by said contract, the Central was to complete the extension by April 30, 1891, which was afterwards extended to September 30, 1891; which promise it has failed to perform. The bill charges this violation of the contract on the part of the Central company, and complains that notwithstanding it, the Central company has obtained

from the Girard bonds to the extent of $37,500, more than it was entitled to, upon representations made to the Girard company that it had completed forty miles of said road according to its contract; and the bill charges that said $37,500 is owing the Girard by the Central company, on account of that transaction; and further that the latter is indebted to the former company in a large sum, to-wit, one million dollars, on account of its failure to complete said extension, and on account of various sums due to it arising from the lease to, and operation by, the Central of the Girard road. It is also alleged that by said lease it was stipulated that the Central would pay, by way of rental of said railroad, its property and franchises, one 50–100 dollars, per share of stock, *per annum*, and the interest on the outstanding bonded indebtedness of the Girard company to the Central company, for alleged advances made; and although the Central has operated the completed 37 miles of the extension, yet the stockholders of the Girard have not derived any benefit therefrom, nor have they received, or been promised any additional rent; and the directors and officers of the Girard company, knowing these facts, have not demanded or received any additional rental or interest for the use of the 37 miles. The bill charges that the Central company and Comer, the present receiver of its property, have declared their purpose not to complete said extension, nor make good to the Girard company the said moneys wrongfully obtained from it. The bill complains of other violations of duty by the Central company, in respect of the property and rights of the Girard company, to the damage of the latter company, specifying sundry acts of willful waste; and alleges that by reason of the wrongs and delinquencies complained of, the Girard company has been subjected to the danger of a multiplicity of suits; that relying on the performance of its said contract by the Central company, it, the Girard company, had entered into a contract with the Van Kirk Land Company, stipulating that said extension should be completed by September 30, 1891.

The bill further alleges that during the period of the Central's possession of the Girard property, it was claiming the same as lessee, while at the same time it was the holder and owner of $690,000 of the bonds of the Girard company; and also owned and controlled, as before

stated, a majority of the stock, and elected its directors and officers. The bill reiterates the invalidity of the lease, and charges that the Central company held said property as *mortgagee in possession*, and should account to the Girard stockholders for all rents, issues and profits received by it, from the operation of the road, from June 1, 1886, to the filing of the bill.

The bill shows that complainants made no effort to induce the governing body of the Girard company, or the stockholders, to institute this suit; and, as excuse for such omission, rely upon the facts hereinabove mentioned, alleged as showing the Central's ownership of a majority of the stock and its actual election, support and supreme control of the present officers and directors. It is also averred that five of the seven directors, and the president, secretary and treasurer are residents and citizens of the State of Georgia.

The bill prays for the appointment of a receiver of the Girard road and property, with authority to complete the extension and operate the road, defend suits and generally to preserve and protect the interests of the company; that said lease of 1886 be declared void; that the Girard stock held by the Central be decreed to be purchased and held in violation of law, and the Central company perpetually enjoined from using the same in any manner, and that the Girard company be perpetually enjoined from paying any interest or dividends thereon; it prays for an accounting between the Central and Girard companies as to all transactions and accounts heretofore or now subsisting between them, and for a decree in favor of the Girard company for such a sum as may be found due; that said Girard company be put in possession of all its property as soon as the stockholders shall have met and elected directors and officers whose election was not brought about, controlled or dictated, in any wise, by the Central company, and for general relief.

The defendants demurred to the bill, the material grounds of which may be condensed and thus stated:

1. It is not alleged that complainants were not parties to said lease, or did not consent thereto after it was made.

2. The lease is not contrary to the laws of Georgia and Alabama, nor in contravention of the public policy of said States.

3. The Central company has power under its charter and the laws of Georgia to hold stock in the Girard company, and to hold the railroad under a lease, and if it had no such power complainants can take no advantage thereof.

4. The court has no jurisdiction as the property is in the hands of a receiver.

5. At the time of filing the bill all the property of the Girard company was under lease to the Central company, and was then in the hands of a receiver of the Central company.

6. Complainants have not sued within a reasonable time, but, after full knowledge of all the grounds of complaint now complained of, or full opportunity to acquire such knowledge, acquiesced in such acts for more than six years, and have been guilty of *laches*.

7. The bill fails to show that complainants made any effort to procure the governing body of the Girard company to institute the suit, without which they have no right to sue.

The Girard company also demurred to so much of the bill as seeks the appointment of a receiver, because it appears from the bill that the property of the Girard company was in the hands of a receiver appointed by another court. And as to so much of the bill as seeks to set aside the lease, on the same ground.

It would seem useless to remark that, in disposing of these demurrers, we must observe the principle, as old as the law of pleading itself, that the demurrer admits the material allegations, well pleaded, to be true ; and the court can consider no fact outside of them. We must, therefore, pass unnoticed very much of the argument of appellees' counsel, which seeks to bring to our view facts not found in the bill.

These demurrers will be considered in the order above stated.

1. The first is not insisted upon in the brief of appellees' counsel, and will not be further noticed.

2. It is well settled that, under the general law, a railroad corporation has no power to lease its road and other property to another, and that such an attempted lease is void as against public policy.—*M. & C. R. R. Co. v. Grayson*, 88 Ala. 572, 7 So. Rep. 122, and authorities there cited. But the Code of Alabama, section 1586,

provides, that any railroad corporation, organized in
pursuance of law, may lease or purchase any part or all
of any railroad constructed by any other corporation or
company, if the lines of such roads are continuous or
connected, upon such terms and conditions as may be
agreed on between the corporations or companies, re-
spectively ; but no such purchase or lease shall be per-
fected until a meeting of the stockholders of each of such
corporations or companies has been called by the direc-
tors thereof at such time and place and in such manner
as they shall designate ; and the holders of a majority
in value of the stock of such corporation or company,
represented at such meeting, in person or by proxy, and
voting thereat, shall have assented thereto.  The bill
shows that at the time of the execution of the lease in
question, the Central company owned and operated other
railroads which connected with the . Mobile & Girard
road.  The lease, a copy of which is made a part of the
bill, recites the proceedings had by the two companies,
respectively, looking to the authorization of its execu-
tion.  These recitals show that it was executed on the
part of the Girard company under authority of a resolu-
tion of the directors, adopted in pursuance of authority
conferred upon them by a previous resolution of the
stockholders, adopted at a meeting held by them.  It
does not appear, however, from the recitals that this
stockholders' meeting was called by the directors, at a
time and place, and in a manner, designated by them.
The bill shows that the authority to execute the lease
was voted for by the Central company, owning and con-
trolling a majority of the Girard stock.  On the part of
the Central Railroad and Banking Company, the recitals
of the lease show only that it was executed and
accepted, in pursuance of a resolution of the board of
directors of that company.  We must assume, as the
case is now presented, that these recitals contain all that
was done on the part of either company.  Having un-
dertaken to set out the proceedings, the presumption is
that all were set out.  *Inclusio unius exclusio alterius.*
Whatever may be said in support of the sufficiency of
the proceedings on the part of the Girard company, it is
manifest there was not a compliance with the law by the
Central company.  As we have seen, the rule of public
policy to which we have adverted is emphasized by the

express mandate of the statute, that no such lease shall be perfected until a meeting of the stockholders of *each* of the corporations or companies has been called by the directors thereof, at such time and place, and in such manner as they shall designate, and the holders of a majority in value of the stock of such corporation or company represented at such meeting, in person or by proxy, and voting thereat, shall have assented thereto. The lease, therefore, by reason of non-conformity to these requirements, finds no support in this statute, but its invalidity, under the general law, is accentuated by the mandatory provisions of the statute inhibiting its execution. Unless, therefore, complainants are estopped by their acquiescence, the bill has equity for the cancellation of this lease.

It must be noticed also that the demurrer under consideration is directed to the whole bill. If for any other equity appearing in the bill, apart from the cancellation of the lease, the complainants are entitled to relief, the demurrer, on this ground, should have been overruled for that reason.

3. As we have seen, the bill alleges that the Central company holds a majority of the stock of the Girard company, acquired when, and as hereinbefore stated; and that the same was acquired with the intent and purpose of getting, by the use of such stock, the management and control of the Girard company, in order to defeat or lessen competition in the respective businesses of the two companies, or to encourage monopoly. We have seen what use the bill avers has been made of the stock by said Central company and the abuse which that company has committed of the property and rights of the Girard company, and its present condition and relation to its own property and that of the Girard company, all of which, so far as concerns the alleged ruinous consequences which resulted to the Girard company, resulted from the ownership and use of said stock by said Central company; and the bill prays, upon these allegations, that the further use of said stock in stockholders' meetings be enjoined. We had occasion to consider a similar demand for relief in the case of *M. & C. R. R. Co. v. Woods*, 88 Ala. 630, 7 So. Rep. 108, and we have in that case, an ample discussion of the whole subject, reviewing a number of authorities. We could add nothing to

that discussion. We there said: "We hold·that it is equally against public policy and against that sound rule which disables trustees, or *quasi* trustees, to act when their duty and interest conflict, that the E. T. Va. & Ga. company should be allowed to vote its majority stock in matters pertaining to the management and control of the M. & C. company." It is our opinion that the facts of this case, as disclosed by the bill, call for the application of the principle here. We think, circumstanced as the parties are alleged to be, the destinies of the Girard company should not be left in the hands of the Central company. There are important interests of the former company to be looked after, which conflict with greater interests of the latter; and it may well be believed that, without a change of management, the rights of minority stockholders are liable to suffer. Again, as we have seen, the constitution of Georgia, in force when the greater portion of the stock was acquired, ordains that, "The General Assembly of this State shall have no power to authorize any corporation to buy shares of stock in any other corporation in this State or elsewhere * * * * * which may have the effect or be intended to have the effect, to defeat or lessen competition in their respective businesses, or to encourage monopoly; and that all such contracts or agreements shall be illegal and void." It is quite clear that the averments of the bill bring this case within the influence of this provision. The Central company is a Georgia corporation, deriving all its powers from the laws of that State. The bill advises us of no provision of its charter securing to the Central company any contractual right which this provision of the constitution is incompetent to infringe. The acquisition and ownership of the greater portion of the stock held by the Central company are shown by the bill to be effectual to subvert the purpose and policy so declared by the constitution of Georgia, and to accomplish the grievances now complained of, and the bill has equity to restrain its use by reason of its illegal ownership so resulting, without reference to the remaining portion of the stock upon which, it may be said, the constitutional provision quoted can not operate. Whether it does operate upon it or not, it is unnecessary now to decide. Hence it is, both under the general law of Alabama and·the organic law of Georgia,

the present bill may be maintained (unless under issues of fact hereafter to be joined its equity may be dispelled) to restrain the use, by the Central company, of the stock it holds in the Girard company, in the management of the affairs of the latter, at least within limitations which the court of chancery may find it equitable to prescribe.

4. It may be enough to say of this ground of demurrer, viz., that the court is without jurisdiction because the property is in the hands of a receiver, that the bill distinctly avers that the Girard company's property has never gone into the hands of any of the receivers. But were the fact otherwise, it would furnish no cause why this bill should not be maintained to restrain the use of the stock as prayed. The granting of this relief would not interfere with the possession of the receivers, or the authority of the courts appointing them, over the property in their hands.—*Gay, Hardie & Co. v. Brierfield Coal & Iron Co.*, 94 Ala. 303, 11 So. Rep. 353.

5. This ground of demurrer, as well as the two grounds assigned to parts only of the bill, fails, under the influence of what has already been said.

6. The complainants have not sued within a reasonable time, but, after full knowledge of all the grounds of complaint now complained of, or full opportunity to acquire such knowledge, acquiesced in such acts for more than six years, and have been guilty of laches. We will consider this with reference to the acquisition and use of the Girard stock. It is our opinion so far as it relates to that cause of complaint, that the contention of appellees can not be supported. Let it be assumed that complainants were fully aware of the ownership of the stock by the Central company, from the time it was acquired, and of that company's use of it in the past, and acquiesced in such ownership and use, this fact furnishes no reason why they should be obliged to submit to further improper uses of the stock. The abuses committed in the past are the very grounds and causes of their present interposition, to the end that future similar abuses may be prevented. The use of the stock is continuing, and we can conceive of no just reason why a party interested, and otherwise entitled to interfere, may not interfere, at any period of such use, and object to its continuance. As well might it be said that a person who

has for a long time, suffered, without objection, continued trespasses upon his property, is obliged, by reason of his silence, to submit to all future trespasses which the wrongdoer may be disposed to commit. We hold that the right to restrain the use of the stock is not barred by acquiescence. This conclusion necessarily results in the overruling of this ground of demurrer, although the same ground seeks to raise the right of complainants to set aside the lease, for, like the others, it is directed to the whole bill. As the question, whether complainants are estopped by their acquiescence to now question the validity of the lease, is not well presented by the demurrer, we announce no opinion upon it. It may be presented in the lower court by demurrer or otherwise as the parties may be advised is appropriate.

There is no demurrer raising the question of complainants' right to an accounting, assuming the validity of the lease, or its invalidity; or the effect upon the right to an account of the allegation that the Central company is a mortgage creditor of the Girard company, and its possession of the latter's property that of a mortgagee in possession. Those questions are left to be properly presented for decision to the court of chancery.

We entertain no doubt that the fact that the Central company owns and controls a majority of the Girard stock, and itself practically created and controls the managing and governing bodies, two or more of the officers and five out of seven of the directors being residents of the State of Georgia, dispenses with the necessity for a demand upon the governing body to institute this suit. Taking the facts stated in the bill to be true, the demand would be fruitless—*Mack v. DeBardelaben,* 90 Ala. 400, 8 So. Rep. 150; *M. & C. R. R. Co. v. Woods, supra,* and cases cited on page 647.

The chancery court erred in its ruling, and its decree is reversed, and a decree here rendered overruling the demurrers and remanding the cause for further proceedings. The defendants will plead to or answer the bill within sixty days, with power in the chancery court, or chancellor in vacation, to extend the time on sufficient showing.

Reversed, rendered and remanded.