# Lea v. Iron Belt Mercantile Co.

*Bill in Equity to Subject Unpaid Subscription of Stock to the Payment of Corporate Debts, &c.*

1. *Record of incorporation proceedings, to what extent notice.*—The record in the probate office of incorporation proceedings under the general laws of the state, is notice to those dealing with the corporation of the existence of the corporation, its corporate powers and capacity, the amount of its capital stock, and the par value of its shares, and also, perhaps, of the fact that certain subscribers reserved and exercised the privilege of discharging their subscription by the conveyance of property, when these facts appear in the subscription contract, and in the affidavit of the person authorized to receive from the commissioners the subscription to stock.

2. *Record not notice of overvaluation; presumption.*—The record of incorporation showing that stock subscriptions were paid by the conveyance of property does not operate as constructive notice to subsequent creditors of the corporation of the real value of the property received in payment of the subscriptions, or that it was grossly overvalued; the creditor is justified in presuming from the record, that the law requiring subscription for stock to be paid in money or in property at its reasonable value had been strictly complied with.

[Lea v. Iron Belt Mercantile Co.]

3. *Presumption that property not overvalued.*—The law presumes, when it is shown that the stock in a corporation has been paid for in full by the conveyance of property, and there is no evidence of value of the property, that the consideration was adequate.

4. *Gross overvaluation sufficient to show fraud.*—The averment that incorporators conveyed to the corporation, in full payment of $1,250,000 of stock, real estate for which they had just paid $90,000, shows the absence of a *bona fide* exercise of judgment and discretion in making the valuation, and intentional non-compliance with the requirement that the property shall be taken at its money value, and is a sufficient averment of fraud.

5. *Receiver of property in foreclosure suit merely, not party to collect unpaid subscriptions.*—A receiver appointed in a suit to foreclose a mortgage on substantially all the property of the corporation, having the custody and management of the mortgaged property, but not interfering with the management and control of the affairs of the corporation generally, by its officers, is not the proper party to enforce the payment of subscriptions for stock; and such receivership is no objection to the maintenance of a bill by a corporate creditor to subject unpaid subscriptions of stock.

6. *Statutes relating to the remedy merely; when may be retroactive.* The only limitation upon legislative power to alter an old remedy or create a new one, which shall apply to causes of action on contracts previously entered into, is that the alteration or the new remedy shall not impair the contract or the rights and liabilities of the respective parties thereto.

7. *Act of February 18, 1895, (Acts, 1894-95, p. 881) relating to the enforcement of unpaid subscriptions, when retroactive.*—The act of February 18, 1895, providing that a judgment creditor of a corporation may proceed in equity to enforce unpaid subscription for stock against any one or more of the stockholders, without joining the others, applies to subscriptions before the passage of the act, unless it is made to appear that to enforce the statutory remedy against one stockholder, would increase his liability by requiring him to pay more than his proportion of the corporate debts; and a bill to enforce the statutory remedy against a stockholder for his liability on stock paid for by the conveyance of property at a fictitious value, not showing the amount of the corporate debts, is not demurrable, even conceding that in such case he is not liable for more than his proportionate share of the corporate debts.

8. *Demurrer to whole bill, when part not demurrer, property overruled.*—A demurrer to the whole bill specifying grounds of objection to one claim for relief, not well taken as to others, is properly overruled.

[Lea v. Iron Belt Mercantile Co.]

APPEAL from Calhoun Chancery Court.
Tried before Hon. J. R. DOWDELL.
The case is stated in the opinion:

J. J. WILLETT, for appellants.—The very incorpora-
tion proceedings which inform the world that the capi-
tal stock of the Piedmont Land & Improvement Com-
pany was $1,250,000.00, and who were the subscribers to
the same, also informed the world as to what lands this
capital stock was to be paid in and the valuation put
upon same. Plaintiff being a subsequent creditor of said
corporation, is therefore chargeable with notice of said
overvaluation, if any, and cannot claim, as against ap-
pellant, that it was injured by said overvaluation of
lands.—*McCormick v. Market Bank*, 165 U. S. p. 550;
*Rickerson Roller-Mill Co. et al. v. Farrell Foundry &
Machine Co.*, 75 Fed. Rep. 555. Demurrer number two
and a half set up the fact that there is no fraud charged
against appellant either in the organization of said com-
pany, or in the subscriptions to said stock, or in payment
of same. Was it not an error to have overruled this de-
murrer? In *Woolfolk v January*, 131 Mo. p. 620 (same
case, 33 So. W. Rep.), it is held "A transaction by which
property is given to a corporation in payment for shares
of stock is binding even as against a creditor of the cor-
poration, unless it is impeached for fraud." And the
United States Supreme Court, in *Memphis & Charleston
R. R. v. Dow*, 120 U. S., pp. 287-297, holds that "These
inhibitions against fictitious increase of stock or debts
of corporations are for the benefit of stockholders only,
and not of creditors." I admit, however, that this last
named case *(M. & C. R. R. v. Dow)* is in conflict with
*Elyton Land Co. v. Birmingham Warehouse Co.*, 92 Ala.
p. 407, and the line of Alabama cases following that
case; but it is in harmony with *Nelson v. Hubbard* and
*Adams Cotton Mill v. Dimick*, 96 Ala. p. 238; *Barrett v.
Pollak Co.*, 18 So. Rep. 615, and *Alabama Iron & Steel
Co. v. McKeever*, 20 So. Rep. 84, holding that the statu-
tory provision making void all mortgages of a corpora-
tion, unless authorized at a stockholders' meeting called
for that purpose, of which four weeks' notice should be
given, was for the benefit of stockholders, and creditors
could not avail themselves of it. A creditor of the insol-
vent corporation cannot single out this respondent and

*18*

collect his whole debt out of him and let all the other stockholders escape liability. The act of February 18th, 1895, *supra*, cannot affect appellant's contract of subscription in this case because appellant is entitled to stand upon the terms of his contract as it was entered into in 1890, and at that time no creditor of the Piedmont Land & Improvement Company could have singled out appellant and proceeded against him singly as is sought to be done in this action.—*Friend v. Powers*, 93 Ala. 114; *Hill v. Merchants' Ins. Co.*, 134 U. S. 515 and 527; *Fourth Nat. Bank v. Franklin*, 120 U. S. 747, 755; *Branson v. Kinzie*, 1 How. 311.

BLACKWELL & KEITH, *contra*.—The appellee rests its right to recover on the principles settled by this court in *Elyton Land Co. v. Birmingham Warehouse Co.*, 92 Ala. 404; *Hall v. Henderson*, 21 So. 1020; *Roman v. Dimmick*, 22 So. 109; Acts, 1894-95, p. 381 and the following authorities from other states: *Thompson v. Reno*, 3 Am. St. Rep. 797; *Gogsbee Invest. Co. v. Iron C. M. Co.*, 23 *Ib.* 417; *Coleman v. Howe*, 45 *Ib.* 133.

·BRICKELL, C. J.—The bill in this cause was filed by the Iron Belt Mercantile Company against Preston Lea and the Piedmont Land & Improvement Company, alleging, in substance, that complainant is a judgment creditor of said corporation, and that execution had been issued on its judgment, and returned "No property found," and that the said Lea was a non-resident of Alabama; that the Piedmont Land & Improvement Company was a corporation organized in the year 1890, with a capital stock of $1,250,000, all of which was subscribed and paid for by the conveyance to the corporation of a large body of land which the subscribers had just purchased for $90,000 and the value of which did not exceed $100,000. A copy of the subscription contract, containing the names of the subscribers, and the amount subscribed by each, and showing that each subscription was to be discharged by the conveyance of said land to the corporation, is attached as an exhibit to the bill. Of the capital stock appellant subscribed for 1,187½ shares, of the par value of $118,750, and his subscription was discharged by the conveyance of his undivided interest in said land, the value of which interest did not exceed

$20,000, and that pretended payment of his subscription was merely colorable, and void as to the creditors of the corporation. The bill further avers that the said Lea is the assignee and owner of a decree against said Piedmont Land & Improvement Company in favor of J. C. Clarke for $1,003.14, rendered in October, 1895, in a suit by said Clarke to have a vendor's lien declared and enforced against 80 acres of land known as the "Piedmont Springs Property," which Clarke had sold to the corporation in 1890; that in November, 1892, said corporation executed a mortgage on substantially all its real estate, to secure an issue of $50,000 of bonds, and that said Lea is the owner of $1,000, or other amount, of said bonds; that a suit is now pending to foreclose said mortgage, in which suit a receiver was appointed, who now has the custody and management of the property covered by the said mortgage, and is managing the same under the direction of the court. The bill prays for an extension of the receivership in this cause; that an attachment issue to be levied on said Piedmont Springs Property, on which the decree of the appellant is claimed to be a lien, and a garnishment issue to said Piedmont Land & Improvement Company, requiring it to answer what it is indebted to said Lea, etc.; that a reference be ordered to ascertain the amount due by Lea on the stock subscribed for by him, and also the amount of said mortgage bonds owned by him, and that his interest in said Piedmont Springs Property be subjected to the payment of complainant's judgment. The bill does not expressly pray that Lea's unpaid subscription be subjected to the payment of said judgment, but contains a prayer for general relief. The appeal is prosecuted from a decree overruling a demurrer to the bill. The objections to the bill specified in the demurrer are: First, because it appears from the bill that the record of the incorporation proceedings in the probate office shows that the subscriptions to the capital stock were discharged by the conveyance of lands to the corporation, and therefore complainant was chargeable with notice of the overvaluation of the property; second, because no fraud is charged against defendant; third, because it appears that the Piedmont Land & Improvement Company is insolvent, and in the hands of a receiver, who alone is the proper party to enforce the payment of unpaid subscriptions to

stock; and, fourth, because the other stockholders of the corporation are not made parties defendant. The record in the probate office of the incorporation proceedings, if the corporation was organized under the general laws of the state—which is not shown by the bill—is undoubtedly notice to those dealing with the corporation of the existence of the corporation, its corporate powers and capacity, the amount of its capital stock, and the par value of its shares, and also, perhaps, of the fact that cer-. tain subscribers reserved and exercised the privilege of discharging their subscription by the conveyance of property, when these facts appear in. the subscription contract, and in the affidavit of the person authorized to receive from the commissioners the subscription to stock. But we are of the opinion that the record of these facts does not operate as constructive notice to subsequent crediotrs of the real value of the property received in payment of the subscriptions, or that it was grossly overvalued. On the contrary, the creditor would be justified in presuming, from the record, that the law requiring subscriptions to stock to be paid in money or in property at its reasonable value had been strictly complied with. The law presumes, when it is shown that the stock has been paid for in full by the conveyance of property, and there is no evidence of the value of the property, that the consideration was adequate.—*Davis v. Chemical Co.,* 101 Ala. 127; 8 South. 496. Conceding, therefore, the principle contended for, that a creditor of a corporation who became such with knowledge that the corporation had received from a stockholder, in full payment of his stock, property at a gross overvaluation, cannot require such subscribers to pay for its benefit the difference between the par value of the stock and the real value of the land, this ground of demurrer is not well taken. The bill shows that appellant and his associates conveyed to the corporation, in full payment of $1,250,000 of stock, real estate for which they had just paid $90,000. As was said in *Elyton Land Co. v. Birmingham Warehouse & Elevator Co.,* 92 Ala. 425, the transfer of property in payment of stock at a valuation so greatly in excess of its real value, which was known to the parties, "shows upon its face the absence of a *bona fide* exercise of judgment and discretion in making the valuation, and intentional non-compliance with the requirements that the property

shall be taken at its money value." No other charge of fraud was necessary than such as is inferable from the above averment. The bill does not aver that the Piedmont Land & Improvement Company is in the hands of a receiver, but only that a suit is pending to foreclose a mortgage on substantially all its real property, and in said suit a receiver had been appointed, who had the custody and management of the property described in the mortgage. This fact alone did not make the receiver the proper party to enforce the payment of unpaid subscriptions, and was no objection to the maintenance of the bill and the granting of relief at the instance of a creditor of a corporation. It does not appear from the averments of the bill that the management and control of the assets and affairs of the corporation by its officers has been interfered with in any respect by the appointment of said receiver, except with reference to the property described in the mortgage.

The last ground of demurrer relates to the non-joinder of the other stockholders as parties defendant. The act of February 18, 1895, (Acts, 1894-95, p. 881), provides that a judgment creditor of a corporation, having an execution returned "No property found," may, by garnishment, subject the unpaid subscriptions of any stockholder to the payment of his debt, whether or not the corporation can maintain suit against such stockholder for such unpaid subscription; and that he may proceed in equity for this purpose against any one or more stockholders, without joining the others. It is contended that this act cannot be construed to have a retrospective operation, so as to make the remedy provided therein applicable to enforce the payment of subscriptions made before the passage of the act, without impairing the obligation of the contract of subscription, in those cases where the stock was paid for by a conveyance of property at an excessive valuation; and hence the application of the act in this particular case would be in violation of the State and Federal Constitutions. The theory of appellant is that before the passage of the act, under the ruling in *Friend v. Powers,* 93 Ala. 114, the liability of appellant is only for such proportion of the amount found to be due on his stock as the amount of the entire indebtedness of the corporation bears to the entire amount due from all the solvent resident stock-

[Lea v. Iron Belt Mercantile Co.]

holders, and hence the application of a remedy which might require him to pay the entire amount due on his stock, when, before the act creating the remedy, he could have been required to pay only a proportional part thereof, impairs the obligation of his contract by increasing his liability. The rule laid down in *Friend v. Powers* was there applied to a case in which it was sought to enforce the individual liability of a stockholder, not for his unpaid subscription, but for that additional security, over and above his subscription, which was provided by the Constitution of 1868 for the benefit of creditors of the corporation; that is the liability for the debts of the corporation "to the amount of the stock held or owned by him." Such rule had no application in a suit brought simply to obtain payment of a debt due from the corporation out of the unpaid subscription of some of its stockholders payable in money, and it is doubted whether it should have any application in such suit when it is sought to ascertain and subject the amount due on subscriptions which were discharged by the conveyance of property fictitiously valued, unless the purpose of the suit is also to wind up the affairs of the corporation. But, conceding that the rule would apply in a case like the present one, in the absence of the statute referred to, there is nothing in the averments of the bill from which it can be inferred that the enforcement of this statutory remedy in this particular case would increase appellant's liability. The only limitation upon legislative power to alter an old remedy or create a new one, which shall apply to causes of action on contracts previously entered into, is that the alternation or the new remedy shall not impair the contract, or the rights and liabilities of the respective parties thereto. *Edwards v. Williamson*, 70 Ala. 145. If the rule laid down in *Friend v. Powers, supra,* was applicable to a case like the one under discussion before the passage of this act, it is easy to conceive of cases in which the enforcement of the remedy provided by the act would require a stockholder to pay more on his subscription than he could have been required to pay by a general creditors' bill, in which all the solvent stockholders were made parties defendant. For example, in a suit governed by that rule, if it appeared that the total amount of the indebtedness of the corporation did not exceed 50 per cent.

of the total amount due from all the solvent stockholders, a stockholder from whom $1,000 was found to be due could be required to pay only $500; yet by the enforcement of the statutory remedy against him alone, he could be required to pay $1,000. But it does not appear from the bill what is the amount of the indebtedness of the corporation, and, therefore, it cannot be said that the liability of the appellant will be in any manner increased by the enforcement of this statutory remedy against him alone. This ground of demurrer was properly overruled.

The demurrers are properly overruled for another reason. The purpose of the bill was, not only to subject the unpaid subscription of appellant, but also to obtain an equitable attachment to be levied on what is called the "Piedmont Springs Property," on which appellant has a lien by virtue of the Clarke decree, and to subject by garnishment the amount due by the corporation to appellant, on the bonds owned by him. The demurrer goes to the whole bill, but the objections specified relate only to that feature of the bill which seeks to subject appellant's unpaid subscription, and, being not well taken as to the other claims to relief, they were properly overruled.—*Tillman v. Thomas,* 87 Ala. 323; *George v. Banking Co.,* 101 Ala. 607. The decree of the chancellor must be affirmed.

Affirmed.